**Paul S. WEBSTER, Plaintiff–Appellee, Cross–Appellant,**

v.

**EDWARD D. JONES & CO., L.P., Defendant–Appellant, Cross–Appellee.**

**Nos. 98–1105, 98–1156.**

United States Court of Appeals, Sixth Circuit.

Argued: April 27, 1999.

Decided and Filed: Oct. 8, 1999.

Patrick R. Hogan (argued and briefed), Lasky, Fifarek & Hogan, Lansing, Michigan, for Appellee.

Stephen S. Muhich (argued and briefed), Mark E. Derwent, Dykema Gossett, PLLC, Grand Rapids, Michigan, for Appellant.

Before: MARTIN, Chief Judge; BOGGS and COLE, Circuit Judges.

## OPINION

BOYCE F. MARTIN, JR., Chief Judge.

Edward D. Jones & Company, L.P. appeals the district court's denial of its Rule 50 motions and motion for a new trial in Webster's breach of contract action arising from Jones & Co.'s failure to sell certain shares of stock.

## I.

In 1991, Paul S. Webster owned about six million shares of stock in a company named Comparator. The stock was restricted and bore a restriction legend, the reason for which is unnecessary for this decision. Periodically, however, Comparator issued an opinion letter which allowed Webster to sell some of his stock through a broker who, in turn, would get the restriction legend lifted. In April 1996, Comparator agreed to lift the restriction from the remaining stock. Webster sent his certificate to United Stock Transfer to have the legend lifted. Webster instructed United Stock Transfer to send one unrestricted certificate for 500,000 shares to Rocky Mountain Securities and Investments, Inc. and one unrestricted certificate to Webster for 3.25 million shares, the amount remaining of the initial six million.

On Saturday, May 4, Webster discovered that the price of Comparator stock had risen from three cents a share to forty-three cents a share. When Webster received his certificate on Tuesday May 7, he decided to sell his shares immediately. He located the office of Jones & Co. and met with broker Peter Keay. Keay contacted Matt Lung, a trader, and informed him that Webster had 3.25 million shares of stock to sell. Lung contacted the office's restricted securities team, who asked Webster numerous questions about his status in the company and the status of his certificate. Eventually, Lung gave clearance to sell the shares.

Although both parties stipulate that they entered into a contract at this time, they disagree on the terms of the contract. Webster testified that he instructed Keay to sell the entire 3.25 million shares and that Keay replied: "if you put that much out at once it will crush the market." Webster further testified that they agreed to put 2 million shares up for sale, although he was unable to remember who suggested the number. Keay testified to the contrary, stating that Webster was concerned about putting all 3.25 million shares up for sale because Webster thought the order could have an effect on the market. Keay testified that Webster told him to place an order for only 2 million shares, but that Keay would have liked Webster to sell all of his shares because the sale would result in a larger commission.

Keay placed an order to sell 2 million shares of Webster's stock, and Webster asked how long it would take to sell all the shares. Keay consulted with someone on the phone and answered that he could probably sell them all that day, but at the latest by noon on May 8. Webster does acknowledge that Keay did not *guarantee* the sale of all his shares by that time. Originally, Webster cited one and one eighths as his limit price, the minimum price at which he would sell his shares. Because the price of the stock kept falling, however, Webster continuously lowered his limit price and eventually ordered the stock to be sold at market price. When Keay had sold 320,000 of the 2 million shares, Webster told Keay to place all of his shares out for sale at market price.

Keay contacted Lung to place a second sell order for the remainder of the 3.25 million shares. Phil Schwab, Jones & Co.'s general partner in charge of over-the-counter trading and Lung's boss, temporarily suspended selling Webster's stock until Webster's stock certificate had been delivered to Jones & Co.'s St. Louis headquarters to confirm its validity. Keay sent Webster's certificate to St. Louis by overnight mail.

At 10:30 a.m. on May 8, Webster again stated that when his certificate cleared, he wanted to try to sell all 3.25 million shares. Approximately thirty minutes before the market closed that day, Schwab informed Keay that he could resume selling Webster's shares. At this time, Keay called Webster to reconfirm the number of shares he wished to sell. Keay testified that Webster said to "finish out the balance of the 2 million share order and then

I will come into your office on the morning of May the ninth and discuss how we will handle the ... additional 1.25 million order." Webster testified that he still wanted to sell all 3.25 million shares when Keay called him. Webster testified: "I said, 'do you think you're going to be able to sell it all today ... ?' He said 'ah, probably not.' I said, 'well, ask them to sell however much they can....' And I said 'if there's any left, I'll talk to you ... in your office first thing in the morning ... and we'll get rid of the rest of it.'"

Keay managed to sell the remainder of the 2 million shares by the close of the market on May 8; however, Webster was unable to sell any more of his stock because on May 9, the National Association of Securities Dealers halted trading in Comparator stock pending an investigation into the unusual trading activity. The suspension remains in effect, although the stock has been trading informally. Webster testified at trial that after he filed his complaint, Keay contacted him and told him that Jones & Co. would still sell his remaining 1.25 million shares at whatever price they could. Webster declined the offer.

On June 27, Webster filed a complaint in district court against Jones & Co., alleging that Jones & Co. had breached its contract to sell all 3.25 million shares of Webster's Comparator stock. Webster alleged damages caused by Jones & Co.'s inability to complete the sale of 2 million shares by noon on May 8, and Jones & Co.'s refusal to sell the additional 1.25 million shares. Jones & Co. maintained that it had only contracted to sell 2 million shares, and that the contract had no fixed time for performance. Jones & Co. also requested a mitigation of damages instruction, which the court refused to give. The jury found that Jones & Co. had breached the contract and awarded Webster one million dollars in damages.

Jones & Co. moved for judgment as a matter of law at the close of Webster's evidence, which the district court denied.

Jones & Co. renewed the motion at the close of all the evidence, and the district court once again denied the motion. Jones & Co. then filed a Motion for Judgment as a Matter of Law or New Trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. The court denied the motion without prejudice, and Jones & Co. filed this appeal. Jones & Co. argues that the district court erred in denying its motions for judgment as a matter of law and for a new trial because Webster failed to present sufficient evidence from which the jury could conclude that Jones & Co. had breached its contract with Webster.

## II.

■ In a diversity case, this Court reviews a district court's decision on a Rule 50 motion which challenges the sufficiency of the evidence under the applicable standard of the forum state. *K & T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175–76 (6th Cir.1996). Because this is a diversity case, this Court applies Michigan law, which states that "[a] judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the nonmoving party." *J.C. Wyckoff & Associates, Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1483 (6th Cir.1991). We must view the evidence in a light most favorable to Webster, the non-moving party. *Mull v. Equitable Life Assurance Soc'y*, 196 Mich.App. 411, 493 N.W.2d 447, 452 (1992).

■ Conversely, we determine whether a district court should have ordered a new trial in a diversity action according to federal procedural law. *Tobin v. Astra Pharm. Prod.*, 993 F.2d 528, 541 (6th Cir. 1993). The district court must compare the offered evidence and set aside the verdict only if it is against the clear weight of the evidence as a whole. *Id.* We review a district court's denial of a motion for a new trial for an abuse of discretion, which we have defined as "a definite and firm

conviction that the trial court committed a clear error of judgment." *Id.*

■ To recover for breach of contract under Michigan law, Webster had to prove: 1) the existence of a contract between Jones & Co. and himself, 2) the terms of the contract, 3) that Jones & Co. breached the contract, and 4) that the breach caused his injury. Jones & Co. stipulated at trial that they did enter a contract with Webster, and the only contractual issue on appeal is the terms of the contract. Webster alleged that under the contract, Jones & Co. was to sell all 3.25 million shares by noon on May 8. Jones & Co., on the other hand, claims that it never agreed to sell the additional 1.25 million shares and that it never guaranteed the sale of the 2 million shares by noon on May 8.

■ Webster presented sufficient proof for a jury to conclude that Jones & Co. placed the 2 million shares for sale in the process of fulfilling its contract to sell all 3.25 million shares. Neither side disputes that Webster originally informed Keay that he had 3.25 million shares of Comparator stock to sell, and that he was in a hurry to get clearance to sell the stock because it was overvalued. Keay testified that he told Webster that his commission for selling all 3.25 million shares would be $87,000. Webster testified that Keay informed him that he could sell all 3.25 million shares by noon on May 8, but that if they put all the shares up for sale at once, it could "crush the market." Webster stated that he understood that Keay would put 2 million shares up for sale in the process of selling all 3.25 million shares.

After Phil Schwab temporarily suspended selling Webster's stock, Webster again stated that when his certificate cleared, he wanted to try to sell all 3.25 million shares. Keay even called Webster to reconfirm the number of shares he wished to sell. Webster testified that he still wanted to sell all 3.25 million shares when Keay called him.

Webster testified: "I said, 'do you think you're going to be able to sell it all today ... ?' He said 'ah, probably not.' I said, 'well, ask them to sell however much they can.... And I said if there's any left, I'll talk to you ... in your office first thing in the morning ... and we'll get rid of the rest of it.'" Although the parties presented conflicting testimony at trial, Webster presented sufficient evidence to allow the jury to conclude that Jones & Co. contracted to sell all 3.25 million shares of Webster's stock. Therefore, the district court correctly denied Jones & Co.'s Rule 50 motions, and did not abuse its discretion by denying the motion for a new trial.

### III.

At trial, Jones & Co. asked the court to instruct the jury on mitigation of damages, requesting Michigan Standard Jury Instruction SJI2d 53.05, which reads:

A person has a duty to use ordinary care to minimize his or her damages after he ... has been ... damaged. It is for you to decide whether plaintiff failed to use such ordinary care and, if so, whether any damage resulted from such failure. You must not compensate the plaintiff for any portion of his/her damages which resulted from his/her failure to use such care.

Jones & Co. argued that Webster failed to mitigate his damages because he never directed the sale of his remaining 1.25 million shares, and that, even after the suspension, Webster could have sold his shares for a reduced price. The judge refused to give the instruction, stating only: "Plaintiff objects. It's out." After trial, Jones & Co. filed a Motion for Judgment as a Matter of Law or New Trial pursuant to Rule 50(b) and Rule 59 of the Federal Rules of Civil Procedure. The district court denied the motion.

■ This Court reviews jury instructions to determine, when reviewed as a whole, whether they adequately inform the jury of relevant considerations and provide

a basis in law for the jury to reach its decision. *Innes v. Howell Corp.*, 76 F.3d 702, 714 (6th Cir.1996). A district court's refusal to give a jury instruction constitutes reversible error if: "(1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case." *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir.1997). Under this three-part test, the jury instructions, viewed as a whole, did not adequately inform the jury of Webster's duty to mitigate his damages.

■ Jones & Co. satisfied the first prong of the test by requesting an instruction that correctly stated Michigan law, which governs this case with respect to the substantive content of jury instructions. *See Hoosic v. Fedders*, 916 F.2d 356, 357 (6th Cir.1990). The instruction correctly stated that Michigan law requires the party seeking damages to mitigate his damages. *See Paragon Transp., Inc. v. Murrell*, 169 Mich.App. 140, 425 N.W.2d 744, 749 (1988).

■ However, the requested instruction is misleading because it does not state that under Michigan law, the defendant bears the burden of proving that the plaintiff failed to use every reasonable effort to mitigate his damages. *Argenta v. Shahan*, 135 Mich.App. 477, 354 N.W.2d 796, 799 (1984). The judge had already instructed the jury that Webster bore the burden of proving "every essential element of his claim by a preponderance of the evidence." If given, the requested instruction may have led the jury to believe that Webster also bore the burden of proving that he made all reasonable efforts to mitigate his damages. The requested instruction, although correct, was therefore not a complete statement of the law and may have misled the jury.

■ Although the requested instruction may have misled the jury, this Court has held that "[e]ven if an incorrect proposed instruction is submitted which raises an important issue of law involved in light of proof adduced in this case, it becomes the duty of the trial court to frame a proper instruction on the issue raised, and the court's instruction may then be considered on appeal." *Katch v. Speidel, Div. of Textron, Inc.*, 746 F.2d 1136, 1139 (6th Cir.1984). Jones & Co. satisfied the first prong of the *Sutkiewicz* test by submitting an accurate statement of Michigan law. Although the requested instruction was misleading, the judge had a duty to frame the instruction properly instead of refusing to give any instruction on mitigation of damages.

Jones & Co. satisfies the second prong of the *Sutkiewicz* test because the court failed to instruct the jury in any way on Webster's duty to mitigate his damages. The only instruction that the district court gave relating to the measure of damages stated: "If you decide that the plaintiff is entitled to damages, it is your duty to determine the amount of money which reasonably, fairly and adequately compensates him for his damages which you decide have resulted from the breach of contract by the defendant. . . ." The instruction did not address Webster's duty to mitigate his damages. Accordingly, the requested instruction was not substantially covered by the other delivered charges. *See Sutkiewicz*, 110 F.3d at 361.

Finally, Jones & Co. satisfies the third prong of the *Sutkiewicz* test because the district court's failure to give the instruction impaired its theory of the case. We held in *Katch* that the question of mitigation was an "important aspect" of a plaintiff's case. *Katch*, 746 F.2d at 1139. Therefore, in this case, the district court's refusal to instruct the jury on Webster's duty to make a reasonable effort to mitigate his damages impaired Jones & Co.'s theory of its case.

■ Under Michigan law, "[e]ven scant evidence may support an instruction

where it raises an issue for the jury's decision." *Klanseck v. Anderson Sales*, 426 Mich. 78, 393 N.W.2d 356, 362 (1986). Jones & Co. presented sufficient evidence to warrant a mitigation of damages instruction. Jones & Co. offered testimony that after it lifted the suspension on Webster's shares, Webster instructed the sale of only the remainder of his original two million share order. In addition, Webster himself testified that Jones & Co. offered to sell his remaining 1.25 million shares even after NASDAQ suspended trading of Comparator shares. Under the *Sutkiewicz* three-prong test, we find that the district court erred by refusing to give the requested jury instruction or failing to formulate a more complete instruction of its own. We reverse for a new trial on damages. At this trial, the court should instruct the jury on Webster's duty to mitigate damages and Jones & Co.'s burden to show that Webster failed to use "every reasonable effort" to mitigate his damages.

Judgment on liability affirmed. The Judgment is reversed for a new trial on damages.