**Julie A. BRYANT, Individually, and as Natural Mother and Next of Kin of Tricia L. Bryant, Plaintiff–Appellant,**

v.

**TENN–KEN RAILROAD CO., INC., Defendant–Appellee.**

No. 02–6182.

United States Court of Appeals, Sixth Circuit.

Aug. 6, 2004.

W. Edward Reeves, Ward & Reeves, Caruthersville, MO, Pamela R. O'Dwyer, Paty, Rymer & Ulin, Chattanooga, TN, for Plaintiff–Appellant.

Everett Gibson, Ralph T. Gibson, Bateman, Gibson, Memphis, TN, for Defendant–Appellee.

Before: BOGGS, Chief Circuit Judge, DAUGHTREY, Circuit Judge, and ALDRICH, District Judge.*

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

ALDRICH, District Judge.

Appellant Julie A. Bryant ("Bryant"), appearing on her own behalf and as natural mother and next of kin for her daughter Tricia Bryant, appeals a jury verdict in favor of defendant-appellee Tenn–Ken Railroad Co. ("the Railroad"). Bryant argues that the jury's finding of no fault on the part of the Railroad stemmed at least in part from errors in the district court's jury instructions and evidentiary rulings. For the following reasons, we affirm the ruling of the district court.

## I. Background

On the morning of November 18, 1999, Julie Bryant left home to drive her daughter to school. Bryant's eastward route included portions of Tennessee Highway 103, a 55 mile-per-hour state highway with a posted reduction to 45 miles per hour some 392 feet from a passive railroad crossing. This crossing, located about one and a half miles from Bryant's home, is indicated by a railroad crossing sign painted on the eastbound lane approximately 221 feet west of the crossing, and a railroad "crossbuck" sign. The crossing is not equipped with flashing lights or crossbars. The tracks themselves are operated by the Tenn–Ken Railroad Company, though Bryant testified that she had never seen any indication that they were in use.

As Bryant approached the railroad crossing at approximately 7:30 am, a Tenn–Ken train traveling at approximately eight miles per hour entered the crossing. The train's engineer/conductor testified that he sounded the locomotive's whistle at 488 feet, or more than 30 seconds, before crossing the highway; Bryant suffers from amnesia, which prevents her from recalling whether she heard the whistle.

The physical evidence indicates that Bryant made no effort to slow the approach of her vehicle. The car struck the oncoming train at a speed of 37–45 mph, at a point 37 feet from the front of the locomotive engine. Tricia Bryant was killed instantly, and her mother sustained severe injuries.

On July 14, 2000, Bryant filed a diversity action in the federal court for the Western District of Tennessee, seeking compensation from the Railroad for her injuries and for the wrongful death of her daughter. Bryant claimed negligence on the part of the Railroad in failing to clear obstructive vegetation from its right-of-way and from the property of an adjoining landowner, and negligence on the part of the Railroad's employees in failing to keep a proper lookout, to sound the horn, and to apply the train's brakes to avoid a collision.[1] Bryant's case proceeded to trial before a jury.

On October 26, 2001, the jury returned a verdict finding no fault on the part of the Railroad. On November 14, 2001, Bryant filed a motion for new trial. On August 26, 2002, the district court denied Bryant's motion, and this appeal followed.

Bryant now argues that the district court erred in refusing to instruct the jury on Tennessee's "tree-cutting statute," TENN.CODE ANN. § 65–6–132, and on a Tennessee condemnation statute, Tenn.Code Ann. § 65–6–109, and in substituting less favorable instructions. She also challenges the district court's rulings on several evidentiary issues.

---

1. Bryant's initial complaint also cited the failure to mark the crossing with adequate warning devices. The district court granted partial summary judgment to the Railroad on this claim, concluding as a matter of law that federal regulations preempted state tort claims concerning the adequacy of warning devices installed using federal funds. *See* 23 C.F.R. §§ 646.214(b)(3) and (4).

## II. Discussion

### A. Standards of Review

In an action predicated on diversity of citizenship, "federal law governs our standard of review for determining whether a jury instruction is prejudicial." *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 166 (6th Cir.1993). We review instructions given by a district judge "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision. A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Elwell v. Univ. Hospitals Home Care Servs.*, 276 F.3d 832, 843 (6th Cir.2002) (citations omitted); *see also Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir.2000).

We will reverse on the basis of a district judge's *refusal* to give a requested instruction where: "(1) the omitted instructions are a correct statement of the law; (2) the instruction[s are] not substantially covered by other delivered charges; [and] (3) the failure to give the instruction[s] impairs the requesting party's theory of the case." *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 820 (6th Cir.1999), quoting *Sutkiewicz v. Monroe County Sheriff*, 110 F.3d 352, 361 (6th Cir.1997).

We review a district court's decisions regarding the admission of evidence for abuse of discretion. *See Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Evidentiary rulings will "remain undisturbed unless this panel is left with the definite and firm conviction that the district court clearly erred in its judgment after weighing the relevant factors,

improperly applied the correct law, or inappropriately used the wrong legal standard." *Shanklin v. Norfolk Southern R'wy Co.*, 369 F.3d 978, 988 (6th Cir.2004), citing *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir.2002). *See also First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir.1993).

### B. The challenged jury instructions

#### 1. Tennessee's tree-cutting statute

■ Bryant first argues that the district court erred in declining to instruct the jury that Tennessee law requires railroad operators to "cut down all trees standing on [their] lands which are six (6) or more inches in diameter two feet (2') above the ground and of sufficient height to reach the roadbed if they should fall." Tenn Code Ann. § 65–6–132 (2004).

In rejecting Bryant's proposed instruction, the district court affirmed the pretrial ruling of Magistrate Judge Allen that the tree-cutting statute "was not intended to protect persons in plaintiff's situation." Although the statute's legislative history is unavailable, the court explained: "[w]e do not need legislative history to conclude that the duty described in this statute is owed to those traveling or shipping by rail, not to those approaching a railway crossing."

A panel of this Court recently addressed this precise issue, stating in a published opinion that "while it cannot be said that Tenn.Code Ann. § 65–6–132 clearly applies to protect against the harm here at issue, neither can it clearly be held otherwise." *Shanklin*, 369 F.3d 978, 993 (6th Cir.2004). We need not make any more sweeping pronouncement on the intended-beneficiary issue at this time.[2]

---

2. Like the panel in *Shanklin,* we also decline to address the contention that Tenn.Code

Ann. § 65–6–132 has been implicitly repealed

Instead, it will suffice for our purposes to hold that the district court acted within its discretion in relying on the tree-cutting statute's early (pre-automotive) enactment date and its clear reference to track-bearing "roadbeds" as reliable indicia that it was not intended to protect motorists approaching a grade crossing. As in *Shanklin*, the losing party's ability to craft a colorable argument to the contrary demonstrates no more than the possibility that the district court committed harmless error.[3]

In the district court proceeding, the jury was presented with considerable evidence—*e.g.*, Bryant's failure to stop at the crossing, or even to apply the brakes before collision[4]—upon which it could have concluded that Bryant's negligence was far greater than that of the Railroad. Under Tennessee law, Bryant may not recover unless her negligence was less than the Railroad's. *See id.* at *41; *McIntyre v. Balentine*, 833 S.W.2d 52, 57 (Tenn.1992). A jury instruction on the contents of the tree-cutting statute was not likely to alter the jury's weighing of this evidence—unless such an instruction supported a theory of negligence *per se*. *See Myers v. United States*, 17 F.3d 890 (6th Cir.1994); *Moody v. United States*, 774 F.2d 150, 157–58 (6th Cir.1985).

As Judge Rogers's concurrence in *Shanklin* makes clear, however, the import and purview of the tree-cutting statute are not sufficiently clear to merit an instruc-

tion on negligence *per se*. 369 F.3d at 995 ("[I]f the district court had instructed the jury that violation of the tree cutting statute required the jury to find negligence on the part of defendant, we would be compelled to reverse.")

Given this finding, and the volume of the evidence presented on Bryant's own negligence, we find that any error committed by the district court in refusing to instruct the jury on the potential duties of the Railroad under TENN.CODE ANN. § 65–6–132 was harmless.

## 2. Tennessee's condemnation statute

█ Bryant also asserts that the district court erred in declining to instruct the jurors that Tennessee law gives the operator of a railroad

> the right, in pursuance of the general law authorizing the condemnation of private property for works of internal improvement, to appropriate as an easement a right-of-way, not exceeding two hundred feet (200'), over the land of any person through which the line of the track may be located.

TENN.CODE ANN. § 65–6–109 (2004). More specifically, Bryant complains that her theory of the case was unjustly impaired by the court's refusal of her tendered instruction, and by its admonishment to the jury that: "the defendant had no right to cut trees on adjoining property without the explicit permission of the owner of the property."

---

or somehow rendered obsolete. *See id.* at 993, n. 12.

**3.** The panel in that case phrased this argument as follows:

> Even if Norfolk could craft a colorable argument that Eddie Shanklin was not an intended beneficiary of this statute, and thus that the district court clearly erred in instructing the jury to consider Norfolk's negligence under Tenn.Code Ann. § 65–6–132, the error is harmless. When an error

made by the court does not prejudice the outcome, the error does not justify reversal. *Id.*, at 993, citing *Toth v. Grand Trunk R.R. Co.*, 306 F.3d 335, 348 (6th Cir.2002)

**4.** Under Tennessee law, motorists are required to stop within 50 feet but not less than 15 feet from the nearest rail of the track when a train is in hazardous proximity to the crossing. *See* TENN.CODE ANN. § 55–8–145(a) (2004).

Reversal is not merited on this point. The text of the condemnation statute is abundantly clear—it creates a *right,* rather than a duty. Not being the operator of a railroad, Bryant cannot logically claim to be an intended beneficiary of the statute, and the district court therefore properly found that the provision was not relevant to any determination of the Railroad's duties *vis à vis* similarly situated motorists.

While the district court's instruction "that defendant had no right to cut trees on adjoining property" may have been misleading, we find that any error in giving it was harmless. The failure to append an appropriate qualifier—*e.g.,* "... except within 200 feet of a duly-claimed easement, and for the purpose of internal improvements"—is not sufficiently grave as to render the instructions as a whole confusing, misleading, or prejudicial.

## C. The challenged evidentiary rulings

### 1. Sight distance charts

█ Bryant challenges the district court's decision to exclude as evidence certain sight distance charts utilized by traffic and design engineers in designing and maintaining grade crossings. Bryant also asserts that the district court erred in instructing the jury "that no regulatory agency ... has adopted as a binding regulation any sight distance chart for railroad highway grade crossing protection or maintenance."

Our inquiry into this issue is essentially foreclosed by *Shanklin.* The panel in that case upheld a seemingly contrary decision—*i.e.,* admitting similar evidence—under the abuse of discretion standard, but then proceeded to address the particular posture of this case.

In *Bryant,* which is a very similar case, Judge Johnstone disallowed the same pieces of evidence that Judge Todd entered into evidence in this case. However, Judge Johnstone did permit the jury to view the [FHWA] Handbook, instructing them that the sight distance chart was in no way a binding regulation. Two judges, certainly exercising reasonable minds, can reach opposite conclusions about the same evidence without either abusing his or her discretion so long as neither court clearly erred in its application of correct law or its invocation of incorrect law.

369 F.3d at 989, n. 5, citing *In re M.J. Waterman & Assocs., Inc.,* 227 F.3d 604, 608 n. 3 (6th Cir.2000).

We adopt the reasoning of the *Shanklin* panel. The sight distance charts submitted in both cases were instructive on the issue of notice, but not equivalent to a legal standard. Despite their dissimilarities, neither Judge Todd's treatment of the evidence in *Shanklin* nor the approach taken by the district court in this case constituted an abuse of discretion.

### 2. Practices of other railroads

Bryant next argues that the district court erred in excluding evidence of the practices and rules of other railroads operating in Tennessee. Bryant had sought to elicit testimony that Norfolk Southern Railway Company (the defendant at trial in *Shanklin* ) routinely requested permission from adjoining landowners to remove vegetation near its rights-of-way in order to provide adequate sight distances for motorists approaching grade crossings.

Bryant claims that the district court excluded all such evidence pursuant to the Railroad's objection to its relevance. However, as the Railroad observes, the trial transcript does not mention any such exclusion. Rather, the district court permitted a fair amount of testimony from Tenn–Ken general manager Barry Crabtree on his access to advice and information from other companies regarding

"railroad issues," including their safety practices and regard for sight distances.

We therefore find that the district court did not abuse its discretion on this point.

### 3. Crabtree's testimony on government citation

■ Finally, Bryant argues that the district court erred in allowing Mr. Crabtree to testify that the Railroad has never been cited by any governmental authority for the presence of vegetation on its right-of-way at the Highway 103 grade crossing. Bryant argues that this testimony was not probative of any material issue, and highly prejudicial.

Again, Bryant's argument mischaracterizes the district court's rulings and the underpinnings thereof. Crabtree testified that the Railroad was (and is) required to comply with the safety and operational mandates of federal law, including various applicable portions of the Code of Federal Regulations. His statement that the Railroad's vegetation removal policies were never held to violate these provisions was probative on the issue of the Railroad's compliance with its duty to safeguard approaching motorists. Given Bryant's inability to link any sight distance charts or similar guidelines to duly promulgated rules, the possibility of conflict between such charts and the federal standards did not render Crabtree's testimony misleading or otherwise prejudicial.

Therefore, the district court did not abuse its discretion in allowing Crabtree to testify as he did.

### III. Conclusion

For the foregoing reasons, the ruling in the district court is affirmed in all respects.