NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0209n.06

No. 09-5156

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Apr 01, 2011
LEONARD GREEN, Clerk

DAVID A. SCHNEIDER,

      Plaintiff-Appellant,

v.

DENNIS R. MOLONY, M.D., PSC

      Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

_____/

Before:     KENNEDY and MARTIN, Circuit Judges; MURPHY, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. David Schneider filed a negligence suit against his dermatologist, Dr. Dennis Molony, in United States District Court for the Eastern District of Kentucky. A jury found for Molony, and Schneider now appeals many of the district court's discovery and evidentiary rulings, as well as its denial of his motions for summary judgment, a new trial, and judgment as a matter of law. The claims that Schneider presents on appeal are more strongly grounded in his displeasure over the outcome of his fair jury trial rather than any legally cognizable theory upon which we could grant him relief. For the following reasons, we **AFFIRM** the judgment of the district court.

---

    [*] The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

## I. BACKGROUND

Molony treated Schneider for eczema from 1987 to 2004. While some may question the seriousness of dermatological conditions,[1] eczema is an extremely unpleasant malady typified by "[s]uperficial skin inflammation, . . . poorly marginated redness, edema, oozing, crusting, scaling, usually pruritus, and lichenification caused by scratching or rubbing." The Merck Manual 786 (17th ed. 1999). To treat Schneider's eczema, Molony prescribed topical steroid creams, moisturizers, and medicated shampoos, but Schneider did not always use them as directed. Molony also administered injections of forty milligrams of Kenalog, a steroid otherwise known as triamcinolone, approximately once every month that were effective in treating Schneider's symptoms. Molony gave Schneider more than 140 Kenalog shots over the course of treatment.

In 2004, Schneider's friend, a nurse, warned him that an excessive Kenalog regimen could reduce bone density and recommended that he have his bone density checked. Shortly thereafter, a physician diagnosed him with osteopenia, or low bone density, and prescribed a medication called Actenol to prevent further bone loss. Schneider believed that the regular shots of Kenalog caused his osteopenia and filed suit against Molony for negligence.

Schneider filed a motion for summary judgment, which the district court denied. The parties proceeded to trial. On November 21, 2008, a jury rendered a verdict for Molony, finding that he had

---

[1]In an episode of the classic comedy series, *Seinfeld*, Jerry and Elaine disparage the gravity of Jerry's girlfriend's dermatology practice. Much to Jerry's chagrin, he assails his girlfriend's bona fides, calling her a "pimple-popper," only to discover that dermatological medicine can in fact be a "life-saver." *Seinfeld: The Slicer* (NBC television broadcast Nov. 13, 1997), *available at* http://www.youtube.com/watch?v=mGFoAX2Rf6g.

not violated the standard of care. Schneider filed a motion for a new trial and a motion for judgment as a matter of law, both of which the district court denied. Schneider now appeals.

## II. DISCUSSION

On appeal, Schneider claims that the district court made many mistakes leading up to, and during, the trial that warrant reversal of the judgment. He also appeals the district court's denial of his motions for summary judgment, a new trial, and judgment as a matter of law.

### A.     Alleged Errors of the District Court Before and During Trial

#### 1.     Standard of review

We review a district court's decisions regarding discovery matters and evidentiary issues for abuse of discretion. *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citations omitted). Reversal is proper "only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Id.* (citation and internal quotation marks omitted).

#### 2.     Using a medical text at trial

Schneider claims that the district court erred by allowing Molony to use a medical text called Andrews' Diseases of the Skin at trial because Molony's attorney, Frank Benton, did not disclose it early enough during discovery. Parties must disclose to each other "a copy—or a description by category and location—of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses" and they must supplement these disclosures if they are incomplete or incorrect. Fed. R. Civ. P. 26(a)(1), (e)(1). Furthermore, if a party fails to disclose a document, the district court may prohibit use of the document at trial. However, the district court may choose to allow use of the document if the court instead orders the non-compliant

party to pay reasonable expenses to the movant, informs the jury of the failure, or "impose[s] other appropriate sanctions." Fed. R. Civ. P. 37(c)(1).

Benton indicated in pretrial filings that he intended to use a medical text covering eczema, but it is unclear whether he identified the title of the text at that time. One week before trial, Benton mentioned the text—Andrews'— by name at the deposition of Schneider's expert witness, Dr. Boyd. Later, at the request of Schneider's attorney, John Metz, Benton faxed Metz a copy of the specific pages in Andrews' that he intended to use at trial. The text in those pages explained that a Kenalog injection may be used once every four weeks to treat eczema if other treatments are not effective. Metz filed a motion in limine the night before trial to prevent Benton from using the pages at trial. Benton explained that he did not know which specific pages he would use at trial until shortly before Boyd's deposition. The district court denied the motion on the contingency that Schneider was able to conduct a supplemental deposition with Boyd concerning the pages. Metz supplementally deposed Boyd that same day and asked Boyd specifically about the pages sent by Benton. Boyd responded at length to the statement, mainly rejecting it. He also pointed out that the text was from an old edition of Andrews' and it was excluded from more current editions. The deposition was filed with the district court and read to the jury.

The record leaves unclear the question of whether Benton disclosed the title of Andrews' in his initial disclosures, and the district court did not make a factual finding regarding the issue. We, therefore, cannot conclude that Benton complied with Rule 26. However, even if Benton did violate Rule 26, we believe that reversal is not required because the district court fashioned an appropriate, alternative sanction pursuant to Rule 37(c)(1)(C). The district court ruled that Benton would be

precluded from using Andrews' at trial unless Metz was able to depose his expert witness regarding the specific pages from Andrews' before the start of trial. Metz was successful in reaching his expert and questioning him about the pages from Andrews' before the start of trial. The district court's order dispelled any prejudice to Schneider from a failure to disclose the Andrews' pages, and it was not an abuse of the district court's discretion to impose it in lieu of excluding the pages. Accordingly, there is no error warranting reversal.

### 3. Scope of Molony's expert witness testimony

Schneider claims that the trial court abused its discretion in allowing Molony's expert witness, Dr. Jennings, to testify regarding the standard of care when, during discovery, Benton disclosed to the court and Metz that the subject matter of Jennings's testimony would only cover damages and not standard of care. Rule 26(a)(2) of the Federal Rules of Civil Procedure requires parties to disclose to each other the names of expert witnesses retained to provide expert testimony and "a complete statement of all opinions the witness will express and the basis and reasons for them."

Dr. Jennings testified about more than just Schneider's damages when he stated that: (1) physicians always perform a risk/benefit analysis before prescribing treatment; (2) physicians use "guidelines" to determine which kind of treatment is appropriate in a given case; and (3) sometimes physicians encounter situations that require them to go beyond the recommendations of a guideline. Allowing this testimony might have been an abuse of discretion by the district court, but none of this testimony affected Schneider's substantial rights at trial.

Jennings's statements concerning standard of care were not surprising revelations. To the contrary, his statements described practices employed by almost any human being in daily life—weighing costs versus benefits when making decisions, consulting the normal approach taken in a certain situation, considering a variance from the normal approach when necessary. *Cf. King v. Ford Motor Co.*, 209 F.3d 886, 900-901 (6th Cir. 2000) (affirming district court's decision to exclude expert testimony regarding highly technical, specialized car parts that was unlikely commonly known to a lay jury because the testimony exceeded scope of expert reports and opposing party was prevented from preparing for this "surprise" testimony). Indeed, almost any adolescent Eagle Scout would know these maxims, and we have confidence that the jury would have as well, even without Jennings's testimony. Therefore, these statements were not prejudicial.

Schneider also claims that the district court abused its discretion by allowing Jennings to testify that he thought Schneider's bone density was probably close to normal based upon bone density measurements included in Schneider's records. This testimony, however, directly concerns Schneider's damages—his osteopenia. Thus, this testimony was in line with the scope of testimony expected by Metz and the court.

Accordingly, reversal is unwarranted here because any errors regarding Jennings's testimony did not affect Schneider's substantial rights.

### 4. Three hospital reports admitted as exhibits

Schneider claims that the district court abused its discretion by allowing Benton to use and admit three hospital records as exhibits at trial because Benton did not disclose them to Metz prior to trial. Benton asserts that he sent the documents to Metz, but Metz states that he never received

them. Benton adds that he listed the documents in his exhibit list, and the court noted that Benton filed the documents with the court before trial. After hearing from Benton and Metz, the court held that it could not conclude that Benton did not send the documents, let alone that he acted in bad faith.

All three documents were hospital reports from separate visits Schneider made to the emergency room for various accidents. They showed that he never broke any bones in any of these incidents. However, Schneider had already admitted on cross-examination that these three incidents occurred and that he did not break any bones as a result of them. Therefore, any error that resulted from admission of the exhibits was harmless. Accordingly, reversal is not required here.

### 5.     Testimony regarding the efficacy of the Kenalog shots

Schneider claims that the district court abused its discretion by allowing Molony to testify that the Kenalog shots provided relief to Schneider from his eczema because it was irrelevant to the standard of care. Benton responds that the testimony was relevant to the standard of care that Molony employed; that is, whether Molony should have given Schneider more shots than normal and relieve his pain or let Schneider continue to suffer. The Federal Rules of Evidence assign an "extremely liberal" definition to relevancy. *Dortch*, 588 F.3d at 400 (citation omitted). "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (quoting Fed. R. Evid. 401).

The standard of care at trial was whether a reasonably competent physician, specializing in dermatology and acting under similar circumstances, would have acted as Molony had. Whether Molony's testimony was relevant to the standard of care depends on whether it tended to prove that

he exercised that standard. Molony introduced evidence that Schneider refused to comply with other kinds of treatment, leaving Kenalog as the only option. He, therefore, chanced the possibility that the extra shots would cause some bone density loss in order to treat the eczema. Ultimately, whether Molony maintained the proper standard of care was a question of fact for the jury. The efficacy of the Kenalog shots in relieving Schneider's pain was probative of what a reasonably competent dermatologist would have done in this situation. Certainly, if Kenalog had no positive effect on Schneider, no physician would have continued to give Schneider the shots if they only caused negative effects. Accordingly, the district court did not abuse its discretion in allowing this relevant testimony and reversal is not warranted here.

### 6. Benton's allegedly improper statements to the jury

Schneider claims that he deserves a new trial because Benton made prejudicial statements to the jury during voir dire, Benton's opening statement, and Benton's closing argument. This Court may overturn a verdict because counsel makes improper statements to the jury only "if there is a reasonable probability that the verdict was influenced by those [statements]." *Bridgeport Music, Inc. v. Justin Combs Publ'g*, 507 F.3d 470, 478 (6th Cir. 2007) (citation and internal quotation marks omitted). However, having reviewed this claim, we see no tenable basis, either in law or fact, that would warrant discussion here or reversal of the district court. Accordingly, we rely upon the district court's rulings regarding Benton's statements.

### B. Schneider's Motion for Summary Judgment

Schneider claims that the court erred by denying his motion for summary judgment. He argues that summary judgment was proper because Molony did not present any evidence

contradicting Schneider's expert testimony that Molony did not exercise the proper standard of care. However, "where [a motion for] summary judgment is denied and the movant subsequently loses after a full trial on the merits, the denial of summary judgment may not be appealed." *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir. 1990). Accordingly, this claim lacks merit.

## C.    Schneider's Rule 50(b) and Rule 59(a) Motions

Schneider claims that the district court erred by denying his motion for judgment as a matter of law pursuant to Rule 50(b) and his motion for a new trial pursuant to Rule 59(a). Both of these motions are based on the sufficiency of the evidence presented so it is appropriate to discuss them concurrently. Schneider argues that no reasonable jury could have found for Molony when Schneider presented expert testimony that Molony breached the standard of care and Molony presented no contradictory expert evidence.

When a district court denies a Rule 50 motion based upon sufficiency of the evidence in diversity actions, this Court applies the law of the forum state. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 818 (6th Cir. 1999) (citation omitted). In Kentucky, "the jury's verdict must be upheld if, drawing all fair and rational inferences from the evidence in favor of the party opposing the motion, the evidence is sufficient to sustain the verdict." *Pivnick v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 483 (6th Cir. 2009) (quoting *Spivey v. Sheeler*, 514 S.W.2d 667, 673 (Ky. 1974)) (internal quotation marks omitted).

When a district court denies a Rule 59 motion for a new trial in a diversity action such as this, we review that denial for abuse of discretion and apply federal law. *Webster*, 197 F.3d at 818-19. (citation omitted). Reversal pursuant to Rule 59 is only required when the verdict "is against the

clear weight of the evidence as a whole." *Id.* at 818. This Court must hold "a definite and firm conviction that the trial court committed a clear error of judgment." *Id.* at 818-19 (citation and internal quotation marks omitted).

Here, the district court correctly denied both motions. Although Schneider presented evidence and testimony that Molony had breached the standard of care by giving Schneider more Kenalog than normally given to a patient, Molony presented evidence to the contrary. Molony testified that he administered the Kenalog to Schneider after deciding that the possible risks outweighed the benefits. This is probative of whether a reasonably competent dermatologist would have taken the same action. It does not matter that Molony did not rely upon an expert witness to present these facts. Molony also presented evidence that Schneider had not actually suffered an injury from the Kenalog. Therefore, the evidence as a whole was sufficient to satisfy either the Kentucky standard for Rule 50(b) motions or the federal standard for Rule 59 motions. Accordingly, the district court did not abuse its discretion in denying Schneider's Rule 50(b) and 59(a) motions.

**D.     Schneider's Rule 60(b)(3) Motion**

Schneider claims that the district court erred by denying his motion for a new trial pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure. He does not list any specific acts of misconduct to support this claim, but vaguely alludes to the same claims already discussed above, which he argues constituted misconduct by Benton so prejudicial as to warrant a new trial.

In a diversity action such as this, the Court reviews the denial of a motion for a new trial for abuse of discretion and applies federal law. *Webster*, 197 F.3d at 818-19. Rule 60 allows a moving party to obtain a new trial for certain reasons outside the scope of Rule 59. One provision allows

a court to order a new trial for reason of "misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Still, granting a new trial "clearly requires the moving party to 'show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding in question.'" *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 455 (6th Cir. 2008) (citation omitted). This Court has described certain types of actions that rise to the level of misconduct and may warrant a new trial pursuant to Rule 60(b). *See Abrahamsen v. Trans-State Express, Inc.*, 92 F.3d 425, 428 (6th Cir. 1996) (describing situations where non-moving party intentionally failed to disclose or produce material requested in discovery, and a material witness gave false testimony that caused a jury to reach a certain conclusion or took the movant by surprise).

Here, none of Benton's actions rise to the level of misconduct. Some of his actions before and during trial most likely caused some amount of prejudice to Schneider, but Schneider does not establish that those actions were the kind of deliberate acts that warrant a new trial. Indeed, as we held above, any prejudice caused by these actions was harmless. Those actions, therefore, could not have impacted the fairness of the trial. Accordingly, the district court did not err in denying Schneider's Rule 60(b)(3) motion.

## III. CONCLUSION

Schneider's claims on appeal stand on very spindly legs. From his brief, it appears that his main frustration lies with the jury's verdict in spite of the fact that Molony presented no expert testimony regarding the standard of care. Out of that frustration, he seems to have grasped at any potential error that the district court may have made regarding discovery or evidence, no matter how

equivocal or harmless those errors might have been.  This case does not present any serious violation

of Schneider's rights.  For the foregoing reasons, we **AFFIRM** the judgment of the district court.