NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0619n.06

No. 14-3335/14-3387

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Sep 01, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GERLING & ASSOCIATES, INC., | ) | |
| | ) | |
| Appellant/Cross-Appellee, | ) | |
| | ) | ON CROSS-APPEAL FROM |
| v. | ) | THE UNITED STATES |
| | ) | DISTRICT COURT FOR THE |
| GEARHOUSE BROADCAST PTY. LTD., | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| Appellee/Cross-Appellant. | ) | |

Before: KETHLEDGE and DONALD, Circuit Judges; McCALLA, District Judge.[*]

KETHLEDGE, Circuit Judge. Gerling & Associates ("Seller") sold a media trailer to Gearhouse Broadcast ("Buyer"), but delivered the trailer late and in defective condition. Buyer repaired the trailer, rented substitute trucks to broadcast a series of soccer games, and then sued Seller for breach of contract. After a trial, the jury awarded damages to Buyer for the repairs and truck rentals. Seller appeals, arguing among other things that the district court erred by failing to instruct the jury that Buyer had a duty to mitigate damages. We agree with that argument, vacate the award for repair damages, and remand for a new trial on those damages. We otherwise affirm.

I.

Seller, an Ohio corporation, makes custom-built trailers that media companies use to broadcast events from remote locations. In February 2010, an Australian media company,

---

[*] The Honorable Jon P. McCalla, Senior Judge of the United States District Court for the Western District of Tennessee, sitting by designation.

Buyer, sought to purchase such a trailer. Buyer's CEO, Graham Elliot, saw an advertisement on Seller's website for a trailer that could be "ready . . . within 45 days." R. 181-3 at 4396. Elliott contacted Seller's president, Fred Gerling, to ask for details. Gerling responded that Seller could have the trailer "ready for [Buyer's] acceptance within 55 working days," and assured Elliott that the trailer would comply with traffic regulations in New South Wales, Australia. R. 181-4 at 4398-99; R. 176 at 3505-06. Elliot explained that his company needed the trailer to broadcast a series of soccer and rugby games. R. 176 at 3511-13.

During further negotiations, Seller proposed a different delivery date, but Buyer replied that Seller's proposed timetable was unacceptable: Buyer needed to begin installing equipment on the trailer by July 1 so that it could broadcast games in the fall. R. 181-5 at 4401-03. Seller then offered to have the trailer ready by May 17, 2010, to deliver the trailer to Australia by July 1, and to sell the trailer for $450,000. R. 181-5 at 4400. Buyer accepted and the parties signed a contract on March 17, 2010. The contract itself did not identify a completion date, but stated that "[t]he completion date quoted is the promised date upon which the unit will be completed[.]" R. 181-1 at 4391.

In late March, Elliot emailed Gerling to express concerns about the width of the trailer: some of the trailer's drawings showed that it would be wider than 2.5 meters, which was too wide for roads in New South Wales. Gerling responded that the problem would be addressed "in a timely manner." R. 181-9 at 4411.

The trailer arrived in Australia in early September—about three months late—at which point Buyer discovered that the trailer was still too wide. Buyer also noticed that the trailer's metal work and paint finish were shoddy, that the expanding sides of the trailer did not fully retract, and that the "[g]eneral build quality" was "very poor." R. 181-17 at 4434. Buyer

contacted an Australian company, Varley Group, which provided a quote for the repairs. After Varley completed the repair work, Buyer received an invoice for the repairs and other work performed on the trailer. Buyer paid the invoice in full.

Around the same time, Buyer rented trucks to broadcast the soccer games. Buyer also needed to cover a professional-cycling event, so Buyer purchased and modified a shipping container to serve as a mobile-production facility at the event.

Seller thereafter sued Buyer in the Southern District of Ohio, seeking a declaratory judgment stating that Buyer had breached the terms of the contract's limited warranty when Buyer hired Varley to repair the trailer, and that Buyer was therefore not entitled to damages. In response, Buyer filed a counterclaim alleging breach of contract and seeking damages incurred in repairing the trailer, renting trucks to broadcast the soccer games, and modifying the shipping container to broadcast the cycling event.

The case proceeded to trial. After the close of evidence, Seller moved for judgment as a matter of law, which the district court granted as to the cycling-event claim, but otherwise denied. The jury awarded Buyer 107,793.90 Australian dollars for the repairs and 244,204.40 Australian dollars for the truck rentals. This appeal and cross-appeal followed.

## II.

## A.

Seller challenges the award of repair damages on two grounds. First, Seller argues that the district court should have granted judgment as a matter of law because, according to Seller, Buyer's evidence of the repair damages was only speculative. We review the district court's decision de novo. *Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014). To prevail on a breach-of-contract claim under Ohio law, which the parties agree applies here, a buyer must

provide a "reasonable basis on which [the jury] could calculate" the amount of damages that the seller's breach caused. *World Metals, Inc. v. AGA Gas, Inc.*, 755 N.E.2d 434, 439 (Ohio Ct. App. 2001). But a buyer need not prove the amount of damages with "mathematical precision." *Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*, 783 N.E.2d 560, 578 (Ohio Ct. App. 2002).

To show how much Buyer paid to repair the trailer, Buyer provided a quote from Varley indicating that the repair work would cost 123,335.10 Australian dollars, as well as Buyer's bank records showing that Buyer paid 349,664.10 Australian dollars for those repairs and for other work performed on the trailer. R. 159-9 at 2888; R. 181-21 at 4448. These two documents gave the jury a reasonable basis on which to calculate damages: the bank records showed the total amount that Buyer paid; the Varley quote showed approximately what portion of the total amount was for the repairs.

Seller responds that the district court should not have considered the Varley quote when deciding whether Buyer presented sufficient evidence as to the repair damages. Specifically, Seller says that the quote was inadmissible hearsay. To answer that argument on its own terms, a document is hearsay only if it is admitted "to prove the truth of the matter asserted." Fed. R. Evid. 801(c)(2). The district court made clear that the quote was not offered for that purpose. R. 178 at 3922 ("[The quote] is not in evidence for the truth of the matter stated therein[,] but just to demonstrate that this quote was communicated from Varley to [Buyer]."). Hence the Varley quote was not hearsay.

Moreover, the quote was admissible under the business-records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). Seller contends that the quote was inadmissible under this rule because Buyer failed to present a "qualified witness" who was "familiar with [Varley's] record-keeping system." Seller Br. at 48. But Buyer did not need to present such a witness to admit the

quote. A document is admissible by a company under Rule 803(6)—even if someone else created that document—so long as a witness testifies that it was "integrated into [the] company's records and relied upon in [the company's] day-to-day operations." *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) (citations omitted); *see also United States v. Hollie*, 25 F.3d 1051, at *3 (6th Cir. 1994) (table decision). One of Buyer's employees, Adrian Young, testified as to both of those things. Hence the quote was admissible under Rule 803(6) as well.

Second, Seller argues that the district court should have instructed the jury that Buyer had a duty to mitigate damages. We reverse if "the omitted instructions are a correct statement of the law[,] the instruction is not substantially covered by other delivered [instructions], [and] the failure to give the instruction impair[ed] the requesting party's theory of the case." *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 820 (6th Cir. 1999).

Under Ohio law, a plaintiff must use reasonable efforts to mitigate damages, but the defendant bears the burden to show that the plaintiff failed to mitigate. *Frenchtown Square P'ship v. Lemstone, Inc.*, 791 N.E.2d 417, 421 (Ohio 2003). Here, Seller asked for a jury instruction that in relevant part provided:

> A party is required to exercise reasonable care to avoid loss and to minimize the consequences of damages. If a party fails to exercise such care, then its recovery is limited to damages that would have arisen even if he mitigated damages . . . If you find by a preponderance of the evidence that [Buyer] has failed to mitigate its damages, then you may only award damages it would have suffered, if any, had it exercised reasonable care and diligence to avoid or minimize its damages.

R. 142 at 2711. That proposed instruction nowhere states that Seller had the burden to show that Buyer failed to mitigate damages. "The requested instruction, although correct, was therefore not a complete statement of the law and [might] have misled the jury." *Webster*, 197 F.3d at 820.

That said, if a party requests a flawed instruction that nevertheless "raises an important issue of law," then the court has a duty "to frame a proper instruction on the issue raised." *Id.* Seller's proposed instruction did raise "an important issue of law," namely that Buyer had a duty to mitigate damages. Thus, the district court should have "frame[d] a proper instruction" on that issue. *Id.*

As for whether Seller's requested instruction was "substantially covered by other delivered [instructions]," Buyer argues that the court's general damages instruction—that the jury could award only "reasonable" damages—was enough. But we rejected the same argument in *Webster*. There, we held that a similar instruction—"it is your duty to determine the amount of money which reasonably . . . compensates [plaintiff] for his damages"—did not "substantially cover[]" the proposed instruction that the plaintiff had a duty to mitigate damages. *Id.* We reach the same conclusion here.

Finally, the court's failure to give that instruction impaired Seller's theory of the case. Seller presented evidence that the trailer could have been repaired for 16,000 Australian dollars—much less than the 107,000 that the jury ultimately awarded Buyer for those same repairs. R. 175 at 3299. Given that evidence, a properly instructed jury might have found that Buyer failed to use reasonable efforts to mitigate damages. Thus, we must vacate the award for repair damages and remand for a new trial on those damages. *See Webster*, 197 F.3d at 821.

B.

Seller challenges the award of rental damages on five grounds. First, Seller argues that the rental fees for the trucks were "cover damages" to which Buyer was not entitled. If a seller fails to deliver a good on time, the buyer may reject the good and seek cover damages, *i.e.*, the cost of "any reasonable purchase of . . . goods in substitution for those due from the seller."

Ohio Rev. Code § 1302.86(A). If the buyer accepts the good, however, he may not seek cover damages. Ohio Rev. Code § 1302.85(A)(1); *id.* § 1302.88. This limitation on cover damages prevents a buyer from receiving a windfall by keeping the original good while buying another on the seller's tab. *See, e.g.*, *Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc.*, 851 F.2d 540, 546 (1st Cir. 1988) (interpreting an identical provision of New Hampshire law). Here, Buyer accepted the trailer. Thus, Seller says, the truck-rental fees were "cover damages" that Buyer could not lawfully recover.

The problem with that argument is that the rental fees were not cover damages in the first place. To seek "cover damages," a buyer must "purchase . . . goods in substitution for those due from the seller." Ohio Rev. Code § 1302.86(A). Here, Buyer did not "purchase" a substitute trailer but merely rented the trucks for a total of seven days while waiting for Seller's trailer finally to arrive. Rather than cover damages, therefore, the rental fees were consequential damages, which are "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know." Ohio Rev. Code § 1302.89(B)(1). Here, Seller in fact knew that Buyer needed the trailer to broadcast the soccer games. Moreover, recovery of the rental fees would merely put Buyer in the same position it would have been in had Seller delivered the trailer on time. Thus, Buyer was entitled to recover the fees as consequential damages.

Second, Seller argues that its warranty expressly disclaims any liability for the rental fees. The warranty provides in relevant part:

> [This] Warranty is limited to [Seller] construction defects only and the service required to resolve those structural issues. [Seller] will not be responsible *for any costs or lost revenue* related to the [trailer] being out of service for any reason.

R.121-1 at 2447 (emphasis added). According to Seller, the truck rentals were "related to the trailer being out of service" and thus "costs" that the Warranty specifically disclaims. By its plain terms, however, the warranty's scope is limited to "construction defects only[.]" The warranty therefore does not disclaim costs that result from other forms of breach, *e.g.*, late delivery. And the jury awarded rental damages only on the basis that Seller "failed to timely deliver the trailer." R. 159-2 at 2804 (Jury verdict form). Thus, the warranty did not preclude Buyer from recovering the rental costs.

Third, Seller argues that, because Buyer did not have a contract to broadcast the soccer games, Buyer could not recover the costs of renting trucks to broadcast those games. But whether Buyer had a contract to broadcast the games is beside the point. Under Ohio law, a buyer may recover any costs "resulting from . . . requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented." Ohio Rev. Code § 1302.89(B)(1). And Seller admits that, at the time of the contract, Seller knew that Buyer needed the trailer to broadcast the games.

Fourth, Seller argues that the district court should have excluded parol evidence as to when the trailer was scheduled to be completed, *i.e.*, the delivery date that Seller's executives quoted during pre-contract negotiations. Under Ohio's parol-evidence rule, the terms set forth in a final agreement "may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement[.]" Ohio Rev. Code § 1302.05. Such terms "may be explained or supplemented," however, "by evidence of consistent additional terms." *Id.* § 1302.05(B).

Here, the sales contract provided that "[t]he completion date quoted is the promised date upon which the unit will be completed[.]" R. 181-1 at 4391. But the contract nowhere identifies that "promised date." Nor does the contract contain an integration clause. Parol evidence

identifying the promised date therefore did not "contradict" the terms of sales agreement, but rather "explained or supplemented" those terms with "consistent additional" ones. Ohio Rev. Code § 1302.05(B).

Seller responds that the district court should have excluded this evidence nonetheless because Ohio law imposes a "reasonable time" for delivery if a contract fails to include a delivery date. But this case is not one where the contract fails to speak to the delivery date at all. Instead, the contract does refer to a delivery date—"the promised date upon which the unit will be completed[.]" R. 181-1 at 4391. And since the contract itself does not identify what the "promised date" was, the district court did not err in admitting parol evidence to allow the jury to identify it.

Finally, Seller argues that Buyer provided no factual basis on which the jury could reasonably calculate how much Buyer spent to rent the substitute trucks. Specifically, Seller says that, in Buyer's damages estimates, Buyer included costs that it would have incurred even if Seller had delivered the trailer on time, *e.g.*, the cost of fueling the trucks, the cost of paying the camera crew, and so forth. Thus, Seller contends, the jury had no basis to calculate the amount Buyer spent to rent the trucks alone.

The record refutes that contention. To show how much Buyer paid to rent the trucks, Buyer presented a series of invoices that included only the cost of renting the trucks and hiring "core crew," *i.e.*, engineers who were familiar with how the rented trucks worked. And Young provided undisputed testimony that, if Buyer wanted to rent the trucks, it had "no choice but to take [the core] crew." R. 178 at 3971. The cost of paying the crew, then, was in fact a cost of renting the trucks themselves. The invoices therefore provided a factual basis on which the jury

could reasonably calculate how much Buyer paid to rent the trucks. The district court correctly denied Seller's motion for judgment as a matter of law as to the rental damages.

C.

On cross-appeal, Buyer argues that the district court should not have granted judgment as a matter of law to Seller as to Buyer's claim for damages related to the cycling event. Buyer contends that the cycling-event damages were "consequential damages" caused by Seller's breach. To recover consequential damages, a plaintiff must show that the damages "were within the contemplation of *both* parties *at the time of the making of the contract*." *The Toledo Grp., Inc. v. Benton Indus., Inc*., 623 N.E.2d 205, 211 (Ohio Ct. App. 1993) (emphasis added). Here, Buyer admitted that it did not tell Seller about the cycling event until a month after the parties signed the contract. R. 176 at 3513; R. 64-1 at 987. And there is no other evidence suggesting that Seller had reason to contemplate damages related to that event. Thus, neither party contemplated the cycling event or any damages related to it when they signed the contract. As a matter of law, therefore, Buyer was not entitled to damages related to that event.

Buyer responds that it "made a commitment to broadcast the [cycling] event based on [Seller's] specific representations about when the trailer would be completed." Buyer Br. at 49. But the question is not whether Buyer reasonably relied upon Seller's representations when Buyer agreed to broadcast the cycling event. Rather, the question is whether *Seller* contemplated damages related to that event when it agreed to sell the trailer. And Seller had no reason to contemplate those damages. Buyer's argument is meritless.

\*    \*    \*

We vacate the jury's award as to the repair damages and remand to the district court for a new trial on those damages. We otherwise affirm the district court's judgment.