*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0301p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

INFO-HOLD, INC.,

> *Plaintiff-Appellant,*

v.

No. 07-4238

SOUND MERCHANDISING, INC., dba INTELLITOUCH COMMUNICATIONS,

> *Defendant-Appellee.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00925—Timothy S. Black, Magistrate Judge.

Argued: July 23, 2008

Decided and Filed: August 18, 2008

Before: BOGGS, Chief Judge; MOORE and CLAY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Daniel J. Wood, LAW OFFICE, Cincinnati, Ohio, for Appellant. Thomas P. O'Brien III, FROST BROWN TODD, Louisville, Kentucky, for Appellee. **ON BRIEF:** Daniel J. Wood, LAW OFFICE, Cincinnati, Ohio, for Appellant. Thomas P. O'Brien III, FROST BROWN TODD, Louisville, Kentucky, for Appellee.

---

## OPINION

---

CLAY, Circuit Judge. Plaintiff, Info-Hold, Inc. ("Info-Hold"), appeals the district court's denial of its Federal Rule of Civil Procedure 60(b) motion for relief from an order, entered pursuant to a Settlement, Release, and License Agreement (the "Settlement Agreement"), dismissing Info-Hold's patent infringement action, brought under 28 U.S.C. § 1338 (2000), against Defendant, Sound Merchandising, Inc. ("SMI"), doing business as Intellitouch Communications. Info-Hold contends that relief is warranted because (1) SMI fraudulently induced Info-Hold to enter the Settlement Agreement, and (2) SMI committed a material breach of the Settlement Agreement. For the reasons that follow, we **AFFIRM** the district court's denial of Info-Hold's Rule 60(b) motion.

1

# I. BACKGROUND

Info-Hold and SMI are manufacturers of on-hold message players. On-hold message players are devices that can be connected to a business telephone system to play pre-stored audio messages through that phone system so that a caller can hear the messages when he or she is placed on hold. Info-Hold has secured several patents to protect the technology used in its various on-hold messaging products.

On December 31, 2003, Info-Hold filed a patent infringement action against SMI in the United States District Court for the Southern District of Ohio. As subsequently amended, Info-Hold's complaint alleged that SMI had infringed upon Info-Hold's U.S. Patent Nos. 6,272,211 and 6,687,352 by making and selling its own on-hold message players. Info-Hold's amended complaint, however, did not identify which of SMI's message players Info-Hold considered to be patent-infringing.

On January 11, 2005, the district court entered a case management and scheduling order which (1) directed Info-Hold to identify by January 30, 2005, the name and model number of any allegedly patent-infringing products of SMI, and (2) ordered that all non-expert discovery be completed by September 30, 2005. By March 1, 2005, Info-Hold had still not specified which of SMI's products it found to be patent-infringing and the district court issued a second order directing Info-Hold to do so. On March 5, 2005, Info-Hold finally identified SMI's OHP5000 product as the allegedly patent-infringing device.

Several months later, on August 5, 2005, Info-Hold sent SMI its first set of discovery interrogatories, which included the following question:

> 10. Please describe all products or services offered by Defendant or any companies or business entities owned in whole or in part by Defendant, Michael Sakakeeny, or any business associate of either, that relate to the on-hold messaging industry.
>
> > a. Please produce any and all documents related to such products or services.

J.A. at 268. In its September 6, 2005 response to this first set of interrogatories, SMI answered question 10 as follows:

> 10. ANSWER: SMI objects to this Interrogatory for the reason that the phrase "relate to the on-hold messaging industry" and the term "business associate" are vague and ambiguous, and for the further reason that this Interrogatory is overly broad, unduly burdensome and seeks the discovery of information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Michael Sakakeeny is not a party in this action and does not control SMI. Without waiving and subject to the foregoing objections, and to the extent this Interrogatory can be understood, SMI offers business telephone units and on-hold message players. SMI offers no "services" other than sales-related services in connection with assisting customers select products.
>
> > a. RESPONSE: SMI objects to this Request for the reason that it is vague, ambiguous, overly broad and unduly burdensome. As written, this Request would literally require production of every document in SMI's possession concerning its business in some way, without regard to whether such business involves allegedly infringing activity in this action. Without waiving and subject to the foregoing objections, see documents produced herewith bearing production nos.

SM 0184 – SM 0240 [relating to SMI's OHP5000 and OHP5500 on-hold message players].

J.A. at 268. Not satisfied with this response, on September 14, 2005, Info-Hold filed a motion to compel SMI to answer question 10 by producing all documents that relate to SMI's on-hold messaging products. The following day, the district court addressed this motion in a telephone conference with the parties' counsel, but reserved judgment on it so as "to give [the] parties time to work it out." J.A. at 133. Despite the district court's hope for a mutual resolution of the issue, Info-Hold and SMI did not have any further discussions, either before or after the close of the discovery period, regarding Info-Hold's request for documents concerning SMI's on-hold messaging products. Moreover, as Info-Hold never sought to renew its motion to compel during the pendency of the suit, the district court never issued a ruling on it.

In the meantime, as the patent-infringement action proceeded, an essential component for production of the OHP5000 became unavailable and SMI was forced to discontinue the product. In January of 2006, SMI replaced its OHP5000 product line with a new OHP7000 product line. As introduced to distributors, the OHP7000 came in two configurations, one which enabled the user to select only one message from among a plurality of messages on a disc to play (later labeled as the "OHP7000S"), and another which allowed the user to create a multi-track selection of messages for repeated playback in user-selected order (later labeled as the "OHP7000M").[1] While the OHP7000 was available for purchase beginning in January of 2006, Info-Hold appears not to have learned of the existence of the product until March of 2006 when it saw the product on display at a trade show.

On May 16, 2006, Info-Hold and SMI took part in a settlement conference under the supervision of Magistrate Judge Timothy S. Black. After a full day of negotiation, the parties reached an agreement to settle and terminate the litigation. This agreement was subsequently memorialized in the written Settlement Agreement, signed by both parties on June 19, 2006. Among other things, the Settlement Agreement granted SMI a license to make, use, or sell on-hold message players incorporating the technology contained in Info-Hold's patents, and provided that SMI would pay royalties to Info-Hold with respect to certain defined categories of these message players. In particular, the Settlement Agreement classified SMI's on-hold message players as either "Type 1" or "Type 2" depending on their functionality.[2] SMI was to pay Info-Hold a $1.00 royalty for each Type 1 player sold and a $5.00 royalty for each Type 2 player sold. In addition to this royalties arrangement, paragraph 17 of the Settlement Agreement prohibited SMI from providing any

---

[1]These specific "S" and "M" product designations were adopted by SMI upon completion of the Settlement Agreement so as to assist with record-keeping for SMI's royalty obligations under the Settlement Agreement.

[2]The Settlement Agreement defines the two types of on-hold message players for which royalty payments are required as follows:

Type 1 ("single track selectable") Player: Any telephone on-hold message playback machine having on-board hardware, software and/or circuitry and an audio signal output connection, that allows a user to program and cause the machine to repeatedly and continuously play one distinct audio message selected by the user from among a plurality of distinct audio messages stored on the machine on a fixed or removable audio storage medium, to the audio output connection.

Type 2 ("multi-track selectable") Player: Any telephone on-hold message playback machine having on-board hardware, software and/or circuitry and an audio signal output connection, that allows a user to program and cause the machine to repeatedly and continuously play a user's selections, in any order the user may desire, of two or more distinct audio messages selected from among a plurality of distinct audio messages stored on the machine on a fixed or removable audio storage medium, to the audio output connection.

J.A. at 239.

assistance, monetary or otherwise, to other parties against whom Info-Hold might bring patent-infringement actions in the future.[3]

On June 20, 2006, after both parties had signed the Settlement Agreement, the district court dismissed Info-Hold's patent-infringement claims with prejudice, pursuant to Federal Rule of Civil Procedure 41(a), but retained jurisdiction over the case so as to enforce the terms of and resolve disputes concerning the Settlement Agreement.

On December 12, 2006, following a dispute with SMI regarding royalty payments sent under the Settlement Agreement, Info-Hold filed a motion with the district court seeking interpretation of the Settlement Agreement or, in the alternative, relief from the district court's dismissal order under Rule 60(b). Specifically, Info-Hold requested that the district court interpret the Settlement Agreement as classifying all of SMI's OHP7000 products, including the OHP7000S, as Type 2 players for purposes of royalties collection. Alternatively, Info-Hold argued that it was entitled to relief from the dismissal order under Rule 60(b) because SMI had fraudulently concealed information about its OHP7000 players during the settlement negotiations and because SMI's attorneys had breached the terms of paragraph 17 of the Settlement Agreement.

On July 23, 2007, the district court entered an order denying Info-Hold's motion. With respect to Info-Hold's interpretation argument, the district court found that there was no dispute that SMI's OHP7000S was not a Type 2 player and refused to modify the Settlement Agreement's language so as to bring the OHP7000S within the Type 2 definition. Turning to Info-Hold's Rule 60(b) argument, the district court held that Info-Hold had failed to produce clear and convincing evidence of fraud or misconduct on the part of SMI. Finally, the district court noted that there was insufficient evidence to demonstrate a breach of paragraph 17 of the Settlement Agreement. Accordingly, the district court concluded that Info-Hold was not entitled to relief under Rule 60(b) and denied the motion.

On September 20, 2007, Info-Hold filed this timely appeal. On appeal, Info-Hold has abandoned its argument regarding the interpretation of the Settlement Agreement and has focused solely on the issue of whether the district court erred in failing to grant relief under Rule 60(b).

## II. DISCUSSION

### A. Standard of Review

We review a district court's denial of a Rule 60(b) motion for abuse of discretion. *Browder v. Dir., Dept. of Corr. of Illinois*, 434 U.S. 257, 263 n.7 (1978); *In re Ferro Corp. Derivative Litigation*, 511 F.3d 611, 623 (6th Cir. 2008). A district court abuses its discretion "when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp.*, 511 F.3d at 623.

---

[3]The full text of paragraph 17 reads:

Participation in Subsequent Patent Infringement Litigation. In litigation of any claims of infringement of any of the Patents that IH and/or Hazenfield may hereafter assert, that have not been released under this Agreement, against parties for conduct that is not licensed under the terms of this Agreement, SMI shall not (a) provide any money to such parties, or assume any expenses for such parties, for purposes of supporting their efforts in such litigation; or (b) voluntarily engage in any efforts to assist such parties in any way in gathering or preparing evidence or arguments for such litigation. Nothing in this paragraph is to be interpreted to require SMI to oppose, resist or seek to avoid court orders, subpoenas or other process purporting to require SMI to produce documents and things or to appear to give testimony.

J.A. at 242-43.

In other words, under this abuse of discretion standard, "conclusions of law are reviewed *de novo* and factual findings are reviewed for clear error." *Jordan v. Paccar, Inc.*, No. 95-3478, 1996 WL 528950, at *5 (6th Cir. Sept. 17, 1996) (unpublished); *accord United States v. Pauley*, 321 F.3d 578, 581 (6th Cir.), *cert. denied*, 540 U.S. 877 (2003).

## B. Analysis

Rule 60(b) sets forth the criteria for determining whether relief from a federal court's judgment or order is warranted. It provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "[R]elief under Rule 60(b) is circumscribed by public policy favoring finality of judgments and termination of litigation." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (internal quotation marks omitted). Accordingly, the party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence. *See Crehore v. United States*, 253 F. App'x 547, 549 (6th Cir. 2007) (unpublished) (citing *Jordan*, 1996 WL 528950, at *9); *Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 498 (7th Cir. 2008).

Info-Hold argues that it is entitled to relief under Rule 60(b) for two separate reasons.[4] First and foremost, Info-Hold contends that the district court's dismissal order should be set aside because SMI engaged in fraud, misrepresentation, or misconduct during the settlement negotiations. Second, Info-Hold claims that relief from the dismissal order is warranted because SMI breached the terms of paragraph 17 of the Settlement Agreement. We find neither of these arguments to have merit and accordingly hold that the district court did not abuse its discretion in denying Info-Hold's Rule 60(b) motion.

### 1. SMI's Alleged Fraud in the Settlement Negotiations

Info-Hold's primary argument in support of Rule 60(b) relief is that SMI committed fraud during the settlement negotiations. In particular, Info-Hold contends that SMI failed to fully disclose that it had two versions of its OHP7000 product, one of which was single-track selectable. Info-Hold claims that the failure to disclose this information was fraudulent because SMI was under a discovery obligation to disclose it, such information was material to the parties' negotiation of the royalty arrangement, and Info-Hold reasonably relied upon this lack of information to its detriment. The district court found these contentions to be unsupported by clear and convincing evidence and denied Info-Hold's request for relief. We are unable to conclude that the district court abused its discretion in reaching this result.

---

[4] In its brief, Info-Hold also appears to argue that the Settlement Agreement should be set aside for a third reason, namely that it is not a valid contract under Ohio law. However, as Info-Hold never presented this argument to the district court when seeking Rule 60(b) relief, we decline to address it on appeal. *See*, *e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is waived on appeal to this Court.").

Info-Hold's fraud argument relies on Rule 60(b)(3) as a basis for relief. As noted above, this provision allows a district court to grant relief in cases of "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). However, while Rule 60(b)(3) clearly requires the moving party to "show that the adverse party committed a deliberate act that adversely impacted the fairness of the relevant legal proceeding [in] question," *Jordan*, 1996 WL 528950, at *6, neither the rule itself nor its official commentary provide a specific definition of "fraud." Likewise, this Court and the Supreme Court have never identified with precision what constitutes "fraud" for purposes of seeking relief under Rule 60(b)(3). *See id*. at *6 (failing to define fraud for purposes of Rule 60(b)(3), but indicating that "'fraud' can be interpreted as reaching deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material").

Following the lead of the district court, the parties seem to presume that the meaning of "fraud" as used in Rule 60(b)(3) should be determined by state law. *See*, *e.g.*, J.A. at 198-99 (Order Denying Info-Hold's Motion for Relief from Settlement Agreement) (citing Ohio cases for the elements of fraud). We find this approach to be misguided.[5] The meaning of a federal statute or rule is generally not determined by state law unless the statute or rule so directs. *See*, *e.g.*, *Taylor v. United States*, 495 U.S. 575, 590-92 (1990) (rejecting the notion that the meaning of "burglary," for purposes of 18 U.S.C. § 924(e), should depend on the definition adopted by the state of the defendant's conviction, and instead finding that the term, as used in § 924(e), "must have some uniform definition independent of the labels employed by the various States' criminal codes"). Instead, when a federal statute or rule includes "terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress mean[t] to incorporate the established meaning of [those] terms." *Neder v. United States*, 527 U.S. 1, 21 (1999) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322 (1992)); *accord Carter v. United States*, 530 U.S. 255, 266 (2000) ("[W]e have not hesitated to turn to the common law for guidance when the relevant statutory text does contain a term with an established meaning at common law."); *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 59 (1911) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense unless the context compels to the contrary.").

In light of these considerations, we will, for the purpose of evaluating Rule 60(b)(3) motions, employ the following general definition of fraud: Fraud is the knowing misrepresentation of a material fact, or concealment of the same when there is a duty to disclose, done to induce another to act to his or her detriment. *See* BLACKS LAW DICTIONARY 685 (8th ed. 2004); 37 AM. JUR. 2D *Fraud and Deceit* § 23 (2001) ("The five traditional elements of fraud . . . include: a false representation; in reference to a material fact; made with knowledge of its falsity; with the intent to deceive; and on which an action is taken in justifiable reliance upon the representation."); 12 MOORE'S FEDERAL PRACTICE § 60.43[1][b] (3d ed. 1999) ("Pursuant to [Rule 60(b)(3)], judgments have been set aside on a wide variety of alleged frauds, such as allegations that adverse parties failed to properly respond to discovery requests, thus preventing opposing parties from adequately preparing for trial, to claims that evidence presented at trial itself consisted of perjured testimony or false documents."). Fraud thus includes "deliberate omissions when a response is required by law or when the non-moving party has volunteered information that would be misleading without the omitted material." *Jordan*, 1996 WL 528950, at *6; *accord O'Neal v.*

---

[5]We note, however, that, as a practical matter, the parties' misguided approach to the application of Rule 60(b)(3) is not outcome determinative in this case. The record does not establish that SMI either made an affirmative misrepresentation or failed to disclose information which it had a duty to provide during the settlement negotiations. *See infra* pp. 7-8. Thus, Info-Hold has failed to establish fraud on the part of SMI under any definition of that term. Nevertheless, as we must ensure that the Federal Rules of Civil Procedure are properly administered by district courts, we find it useful to clarify the definition of fraud to apply in Rule 60(b)(3) cases.

*Burger Chef Systems, Inc.*, 860 F.2d 1341, 1347 (6th Cir. 1988) ("General common law theories of fraud encompass both acts of commission, i.e., a false representation of an existing fact, and acts of omission, i.e., failure to disclose material facts when under a duty to do so."). Accordingly, to establish grounds for relief under Rule 60(b)(3), the moving party need not demonstrate that the adverse party has committed all the elements of fraud specified in the law of the state where the federal court is sitting, but rather must simply show that the adverse party's conduct was fraudulent under this general common law understanding.

Applying this common law notion of fraud to the facts of the instant case demonstrates that the district court did not abuse its discretion in denying Info-Hold's request for Rule 60(b)(3) relief. Info-Hold failed to establish by clear and convincing evidence that SMI either affirmatively misrepresented the features of its OHP7000 series products or deliberately breached a duty to disclose such information. While Info-Hold claims that SMI indicated during the settlement negotiations that the OHP7000 was multi-track selectable, and thus a Type 2 on-hold message player—a statement which would be only partially true given the two different configurations of the OHP7000—the record is equivocal on this point. *Compare* J.A. at 244 (Declaration of Joey C. Hazenfield, Info-Hold's President and Chief Executive Officer) ("During the conference, Jim Fallon [Chief Financial Officer of SMI] represented or acknowledged, on more than one occasion, that the OHP7000 player was programmable and/or a Type 2 player. . . . During the conference, I spoke of the OHP7000 player as being programmable. Jim Fallon never objected or raised an issue about this characterization."), *with* J.A. at 297 (Declaration of Jim Fallon) ("I did not make any statement that the OHP7000 was programmable or multi-track selectable during the Settlement Conference."); J.A. at 256 (E-mail from Jim Fallon to Joey Hazenfield sent on Sept. 12, 2006) ("It is my recollection that during the settlement conference we specifically discussed the feature sets for [SMI's on-hold message players]. The standard [OHP]7000 is single-track selectable; I believed this was clear from the discussions. . . . At no time did we distinguish the 6000 from the 7000 on the basis of track selectability (the main significant distinction is the 7000 has a CD drive and the 6000 does not), and at no time did I represent that the 7000 was or was not multi-track selectable."). In light of the parties' factual dispute concerning whether such a misrepresentation was actually made and the presence of evidence in the record suggesting that such a misrepresentation was not made, we cannot find that the district court clearly erred in determining that SMI did not make such a misrepresentation. *See*, *e.g.*, *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous.").

Likewise, we are not convinced that the district court erred in concluding that SMI did not deliberately breach a duty to disclose information about its OHP7000 product line. Info-Hold contends that SMI had a continuing discovery obligation to provide information about the OHP7000 as a response to question 10 of its first set of interrogatories, which SMI breached when it failed to inform Info-Hold that there was a single-track selectable version of the product. The record, however, does not clearly demonstrate that SMI violated any of its discovery obligations.

Federal Rule of Civil Procedure 26 generally enables a party to "obtain discovery regarding any nonprivileged matter that is relevant to [the] party's claim or defense," Fed. R. Civ. P 26(b)(1), and to have that discovery material updated and corrected by the opposing party throughout the course of the proceedings. Fed. R. Civ. P. 26 (e)(1). Nevertheless, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)); *accord Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (5th Cir. 1978) (Rule 26 "does not, however, permit a plaintiff to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive."). Likewise, a party who reasonably perceives a discovery request from the opposing party as too broad or too vague to comply with may object to the request and seek clarification from the

opposing party and the district court. *See* Fed. R. Civ. P. 26(b)(2); Fed. R. Civ. P. 33(b)(3) ("Each interrogatory must, *to the extent it is not objected to*, be answered separately and fully in writing under oath." (emphasis added)).

In the instant case, SMI appears to have exercised this right by objecting to question 10 of Info-Hold's first set of interrogatories on the grounds that the question was "overly broad, unduly burdensome, and [sought] discovery of information that [was] neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." J.A. at 268; *see* Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated with specificity."). In providing this objection, SMI shifted the burden to Info-Hold to either clarify its discovery request or seek an order from the district court directing SMI to comply with Info-Hold's discovery request as originally phrased. *See* Fed. R. Civ. P. 26(b)(2); Fed. R. Civ. P. 33(b)(4). Although Info-Hold initially pursued this latter course of action, the district court never ruled on Info-Hold's motion to compel and thus never affirmatively placed an obligation on SMI to respond to Info-Hold's discovery request. Despite this non-ruling, Info-Hold never renewed its motion to compel or sought a ruling on it.

In light of this lack of a ruling by the district court, it is not clear that SMI's response to Info-Hold's interrogatory and subsequent failure to update its response with information about the OHP7000 was a violation of its discovery duty to respond. On the contrary, the district court's later ruling on Info-Hold's Rule 60(b) motion suggests that it did not view SMI as having a discovery obligation to provide Info-Hold with information about the features of the OHP7000. Moreover, given the fact that the OHP7000 had been publicly available for purchase for over four months prior to the settlement conference, it seems likely that SMI reasonably believed that Info-Hold was already aware of the product's features as well as its two configurations—the OHP7000S and the OHP7000M—and thus felt it unnecessary to discuss such information during the settlement conference.

In short, Info-Hold has failed to present clear and convincing evidence that SMI deliberately withheld information about the OHP7000 which it was required to provide. Accordingly, we find that the district court did not abuse its discretion in concluding that Info-Hold has not sufficiently demonstrated fraud or misconduct on the part of SMI so as to justify relief from the dismissal order under Rule 60(b)(3).

## 2. SMI's Alleged Breach of the Settlement Agreement

Info-Hold's second argument for Rule 60(b) relief is that SMI breached paragraph 17 of the Settlement Agreement. In particular, Info-Hold claims that, approximately three months after the settlement conference, SMI's attorneys filed a responsive pleading in a patent-infringement action brought by Info-Hold against a different defendant, Trusonic, Inc. ("Trusonic"), which "asserted counterclaims and invalidity allegations that appeared to have been based on information that only SMI and Info-Hold had at the time of the pleading." Pl. Br. at 45. The district court found this argument to be without merit and refused to grant relief from its order on this basis. We do not find this decision to constitute an abuse of discretion.

Info-Hold does not specify which prong of Rule 60(b) it relies upon in seeking relief for SMI's alleged breach of the Settlement Agreement. A review of the Rule reveals two plausible candidates: (1) Rule 60(b)(3), which permits a court to grant relief for an opposing party's "misconduct," Fed. R. Civ. P. 60(b)(3); or (2) Rule 60(b)(6), a catch-all provision, which allows a court to grant relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). With respect to the former, we note that only one federal court has even suggested that the "misconduct" provision in Rule 60(b)(3) might encompass the breach of a settlement agreement. *See Nigrelli v. Catholic Bishop of Chicago*, No. 94-2528, 1995 WL 605504, at *2 (7th Cir. Oct. 11, 1995)

(unpublished) (noting that the plaintiff had argued that the defendant's breach of their settlement agreement was "so substantial as to require rescission of the settlement agreement and reopening the case under the 'misconduct' provision of Rule 60(b)(3)," but finding that the defendant had not breached the settlement agreement). Rule 60(b)(6), in contrast, appears to be the provision most relied upon in seeking relief from a judgment on the basis of a breach of the underlying settlement agreement. *See*, *e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994) (noting that some courts of appeals have held that the reopening of a dismissed suit on the basis of a breach of the underlying settlement agreement can be obtained under Rule 60(b)(6)). In our Circuit, however, the breach of a settlement agreement does not, by itself, justify relief under Rule 60(b)(6). *See Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 469-70 (6th Cir. 2007). Rather, because Rule 60(b)(6) is intended to apply "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule," *Blue Diamond Coal Co.*, 249 F.3d at 524 (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)), a court may vacate a prior order of dismissal which was based upon a settlement agreement only "when required in the interests of justice, not whenever [the] settlement agreement has been breached." *Ford*, 487 F.3d at 470 (quoting *Harman v. Pauley*, 678 F.2d 479, 481 (4th Cir. 1982)) (emphasis altered).

In the instant case, Info-Hold has not only failed to demonstrate by clear and convincing evidence that the Settlement Agreement was breached, but has also failed to establish that "the circumstances herein are [so] extraordinary or exceptional" that relief is warranted under Rule 60(b)(6). *Id*. In support of its Rule 60(b) motion, Info-Hold provided only its allegation that, three months after the settlement in this case, SMI's attorneys had filed, on behalf of Trusonic, a pleading which "asserted counterclaims and invalidity allegations that appear to be based upon information that only SMI and Info-Hold had at the time of the pleading." J.A. at 233. Info-Hold offered no actual evidence to support this claim or any documents which might have enabled the district court to determine whether the assistance that SMI's attorneys allegedly provided Trusonic was in fact in violation of paragraph 17. Likewise, nothing in the record appears to support a finding that such alleged conduct would, in the interests of justice, require vacating the dismissal order. In light of this lack of evidence to support Info-Hold's request for relief, we are unable to conclude that the district court abused the discretion granted it by Rule 60(b)(6) when denying Info-Hold's motion.

### III. CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.