NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1077n.06

Nos. 11-5120/5499/6320

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Oct 15, 2012*
DEBORAH S. HUNT, Clerk

ESTATE OF LEEROY HICKMAN, JR., Jerry Lee
Hickman, personal representative,

      *Plaintiff-Appellant*,

v.

DOUG MOORE, Individually; LESLEY CRAIG;
ROBERT BERKLEY; MATTHEW GILMORE,
Individually and Officially; JOHN DOE, I; JAMES
LEE BERRONG, Officially; BLOUNT COUNTY,
TENNESSEE,

      *Defendants-Appellees*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

O P I N I O N

BEFORE:    COLE and KETHLEDGE, Circuit Judges; THAPAR, District Judge.[*]

COLE, Circuit Judge.  On February 24, 2008, Plaintiff-Appellant LeeRoy Hickman, Jr., was shot and killed by police in an attempt to arrest him in connection with a domestic violence incident. Hickman's estate, through his personal representative Jerry Lee Hickman, brought suit against Defendants-Appellees Lesley Craig, Robert Berkley, Doug Moore, and Matthew Gilmore, in their individual and official capacities, against Defendants-Appellees John Doe and James Lee Berrong in their official capacities, and against Defendant-Appellee Blount County, Tennessee. Hickman's claims against Craig, Berkely, Gilmore, and Moore alleged excessive force in executing Hickman's

---

[*] The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

arrest, in violation of 42 U.S.C. §§ 1983 and 1988. His claims against Blount County alleged failure to supervise and deliberate indifference, in violation of 42 U.S.C. § 1983. The district court granted summary judgment in favor of all Defendants except Moore. Additionally, the district court denied the following: (1) Hickman's motion pursuant to Federal Rule of Civil Procedure 56(f), to delay ruling on summary judgment to allow for further discovery; (2) Hickman's motion pursuant to Federal Rule of Civil Procedure 60(b)(2) to revise its ruling on the Rule 56(f) motion in light of "newly discovered evidence"; and (3) Hickman's motion to file what Hickman termed a "Gunowner Rights" claim against Defendants-Appellees.

Hickman appeals the district court's grant of summary judgment to all Defendants except Moore and the district court's denial of his motions. Moore appeals the district court's denial of qualified immunity. For the reasons that follow, we AFFIRM the district court's grant of summary judgment to all Defendants except Moore; we DISMISS Moore's appeal of the district court's denial of qualified immunity for lack of jurisdiction; and we AFFIRM the district court's denial of (1) Hickman's motion to reconsider his "Gunowner Rights" claim; (2) Hickman's Rule 56(f) motion; and (3) Hickman's Rule 60(b)(2) motion.

## I. FACTS

*A. Factual History*

On February 24, 2008, Officers Craig, Moore, Berkley, and Gilmore attempted to arrest Hickman for a domestic disturbance. Prior to the attempted arrest, Hickman's wife and adult daughter had warned police that Hickman kept guns in his house and that he had previously threatened to "shoot until he is out of ammo and [] then take his own life" if officers attempted to

arrest him. For this reason, the officers developed a plan to lure Hickman out of his residence before executing the arrest. According to the plan, at approximately 10:00 p.m., Craig, a female officer of approximately the same age as Hickman's daughter, would dress in plain clothing, park an unmarked van in front of Hickman's residence, feign engine trouble, and ask Hickman for help. Craig would carry a cell phone in her back pocket, allowing the other officers to overhear the conversation between her and Hickman. When Hickman came to the van to help her, Craig would move to the back of the van and Moore, Berkley, and Gilmore would converge and execute the arrest.

Craig had some trouble convincing Hickman to exit his house to assist her. While attempting to persuade Hickman to come out to the van, Craig's cell phone lost power, leaving the officers without access to the conversation. Shortly after 11:00 p.m., Craig prevailed and Hickman exited his residence.

There is some dispute regarding the events that unfolded next. According to Moore, Gilmore, and Berkley, they saw Hickman and Craig walk toward the van. Once Hickman began looking under the hood, Craig moved to the back of the van. At this point, Moore, Gilman, and Berkley ran across the lawn toward Hickman yelling "sheriff's office, sheriff's office." Berkley added "sheriff's office, show me your hands." Hickman did not show his hands. Instead, Hickman placed his right hand inside his coat pocket and "brought it up in his jacket as if he were pointing a gun at Moore." Witnessing this action, Moore proceeded across the street, yelling "gun, gun, gun," as Gilmore and Berkley continued to yell "let us see your hands." Berkley racked his shotgun, prompting Hickman to turn toward him and Gilmore. Upon hearing the other officers yelling, and seeing that Moore had no cover, Craig moved to the front of the vehicle and drew her firearm. Craig

noticed that Hickman had turned so that his back faced her. Although she could not see whether he had a gun, she fired several shots at Hickman. Hickman then fell into a ditch. After Hickman fell, the officers removed his hands from his pockets and handcuffed them behind his back. During this process, the officers claim to have found Hickman's gun.

Hickman paints a different picture of the events. He asserts that the loss of the cell phone contact between Craig and her fellow officers caused Moore, Berkley, and Gilmore to panic. Hickman alleges that, as he approached the vehicle, Moore, Gilmore, and Berkley sprinted to the van. Seeing Moore running with his gun drawn, and hearing him yell "gun, gun, gun," Craig also panicked. She moved to the front of the van and "unloaded her entire magazine at Mr. Hickman's back." Hickman alleges that Moore also shot at Hickman's back. He claims this was done "gratuitously and in reaction [to] Craig shooting Mr. Hickman." Four minutes elapsed between the shooting and when the officers summoned an ambulance. During that time, the officers allegedly moved Hickman's body, entered his residence, and removed weapons. Hickman stresses that no blood was found on the gun or on the area surrounding Hickman's body, and that the officers differ in their accounts of how and where they found the gun.

Hickman also contends that Officer Israel Hernandez of the Alcoa Police Department arrived at the scene shortly after the ambulance. When he arrived, a male officer was standing in the middle of the road waiving a flashlight, and according to Hickman, told Officer Hernandez, "He wouldn't pull his f[*****] hands out of his pockets. He's already known to have assault weapons."

Subsequently, officers conducted a consensual search of the home, where they took pictures of a gun at the scene and of an empty gun holster purportedly found by a night stand. Hickman's

wife claimed that the gun found at the scene is not one that Hickman would have carried and that Hickman did not keep a gun by the night stand.

B.  *Procedural History*

Hickman filed suit, alleging violations of 42 U.S.C. §§ 1983 and 1988, as well as state law claims for assault and battery, wrongful death, violations of the Tennessee Constitution, violations of Tennessee's Governmental Tort Liability Act ("GTLA"), and violations of the "common law duty of office," which Hickman characterized in his Complaint as "a duty to not fail or neglect the performance of a duty of . . . office as Blount County Deputy Sheriffs." The district court remanded the state law claims to state court and granted Hickman leave to file an amended complaint to include an excessive force claim against Blount County alleging failure to supervise and deliberate indifference. All individual defendants asserted a qualified immunity defense and moved for summary judgment. They argued that their actions were objectively reasonable and that they did not violate any of Hickman's clearly established rights. Blount County asserted that Hickman could not meet the threshold requirements for municipal liability.

Before the district court had ruled on the motion for summary judgment, Hickman filed two Rule 56(f) motions, requesting to conduct further discovery regarding the precise position of Hickman's body after the shooting and Blount County's alleged spoliation of evidence. The district court granted summary judgment in favor of Craig, Berkley, Gilmore, and Blount County, finding no factual basis to support Hickman's claims against them. In examining the claim against Moore, the district court found a genuine dispute of material fact as to Moore's use of force. The court found that expert opinion supported Hickman's assertion that he was retreating at the time that

Moore shot him, and it found the events following the shooting raised suspicions about the propriety of Moore's conduct. In this same order, the district court dismissed Hickman's Rule 56(f) motions as moot, because the court had based the summary judgment ruling on other evidence.

After the district court issued final judgment, Hickman filed a motion pursuant to Federal Rule of Civil Procedure 60(b), asking the district court to reconsider its summary judgment in favor of Blount County in light of new evidence and to reconsider its denial of Hickman's motion for further discovery. The district court denied this motion.

Hickman appealed the following: (1) the district court's grant of summary judgment as to all Defendants except Moore; (2) the district court's denial of Hickman's Rule 56(f) motions; (3) the district court's denial of Hickman's motion to reconsider allowing Hickman's so-called "Gunowner Rights" claim; and (4) the district court's denial of Hickman's Rule 60(b)(2) motion.

Moore appealed the district court's denial of his motion for summary judgment.

## II. ANALYSIS

### A. Summary Judgment in Favor of Officers Craig, Berkley, and Gilmore

We "review de novo a district court's denial of summary judgment based on immunity from suit," construing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Sabo v. City of Mentor*, 657 F.3d 332, 336-37 (6th Cir. 2011). Summary judgment is proper when, based on the totality of the record, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In determining whether qualified immunity protects a government official from liability under § 1983, we apply the two-prong *Saucier* test and ask (1) whether the officer violated a constitutional right and (2) if so, whether that constitutional right was clearly established such that "a reasonable official would understand that what he [did] violates that right." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *abrogated in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). We may begin our analysis by considering either prong of the *Saucier* test. *Pearson*, 555 U.S. at 236. Because the first prong is dispositive, we begin with that prong.

To determine whether the officers are entitled to qualified immunity under the first *Saucier* prong, we must identify "the specific constitutional right allegedly infringed." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Hickman contends that the officers violated the Fourth Amendment by using excessive force. We evaluate a challenge to an officer's use of force under an "objective reasonableness" standard. *Simmonds v. Genesse Cnty.*, 682 F.3d 438, 444 (6th Cir. 2012) (citing *Graham*, 490 U.S. at 397). We ask "'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quoting *Graham*, 490 U.S. at 397) (internal quotation marks omitted). Reasonableness is determined at the moment of the use of force, as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). An officer who has not exerted excessive force "may be responsible for another officer's use of excessive force if the officer

(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Bletz v. Gribble*, 641 F.3d 743, 754 (6th Cir. 2011) (internal quotation marks omitted).

### 1. *Officer Lesley Craig*

The district court found that Craig reasonably believed that Hickman posed a threat to others at the time she shot Hickman. The court found no basis to support Hickman's argument that Craig had fired in panic, finding instead that the officers' affidavits showed "that Craig was in control of the situation." Further, the court determined that Craig reasonably believed that Hickman had a gun at the time she fired, despite her failure to see a gun, based on her knowledge of his prior threats, her interactions with him up to that point, and hearing Moore yell "gun, gun, gun." The court concluded that, "[j]udging Craig's actions from the perspective of a reasonable officer on the scene, . . . Craig was forced to make a split-second decision that Mr. Hickman posed a serious risk of physical harm to herself or to others . . . ." Thus, her decision to shoot Hickman was reasonable.

Hickman argues that "Craig was not entitled to qualified immunity because she does not and cannot articulate a factual basis for believing Mr. Hickman was threatening when she shot him." He points out that Craig did not hear Hickman utter any threats nor did she see anything to indicate that he was armed. Rather, she approached Hickman from behind, heard Moore announce that Hickman was armed, and opened fire. Moreover, Hickman cites evidence indicating that Craig did not know where the other officers were located when she shot Hickman, drawing the inference that she could not have believed him to be threatening to others when she did not know where the other officers were standing.

We are not persuaded. In assessing the reasonableness of Craig's beliefs, we must take into account not only Craig's lack of knowledge of the location of her fellow officers but also her additional knowledge that (1) Hickman's wife and adult daughter had warned the officers that Hickman had threatened to use deadly force against them, (2) Hickman was not complying with the officers' orders to show his hands, and (3) Moore had recently indicated that Hickman had a gun. Taking this knowledge together with the fact that Craig had no indication that Hickman was *not* facing her fellow officers, we find reasonable Craig's belief that Hickman was armed and that he posed a threat to the safety of the other officers. Thus, we agree with the district court's determination that her actions were reasonable and AFFIRM the grant of summary judgment on the basis of qualified immunity.

### 2. Officers Robert Berkley and Matthew Gilmore

Neither Berkley nor Gilmore fired at Hickman. Nonetheless, Hickman has brought an excessive force claim against these officers based on their participation in the events leading up to the shooting. Hickman argues that Berkley and Gilmore "actively participated in the use of excessive force" against Hickman by engaging in actions that "heightened the intensity of the ruse," leading to the fatal shooting. He relies on *Claybrook v. Birchwell*, 274 F.3d 1098 (6th Cir. 2001) for the proposition that officers may be held liable for participating in the events leading up to a police shooting if the police "ultimately brought the parties from stand-off to shoot-out." Hickman does not allege that either Berkley or Gilmore supervised the officers responsible for the shooting or had a duty to protect Hickman.

*Claybrook* is readily distinguishable from the case at bar. In *Claybrook*, we found that the officers involved in a police shooting were not entitled to qualified immunity because they may have fired the first shot, inciting Claybrook to return fire, culminating in the officers killing Claybrook in self defense. 274 F.3d at 1105. Importantly, the officers in *Claybrook* were not in uniform and had not identified themselves prior to the first shot being fired. *Id.* Given the dispute regarding whether Claybrook or the officers had fired that shot, it remained possible that the officers had fired at Claybrook prior to announcing themselves and prior to Claybrook engaging in any action that threatened them. *Id.* Indeed, this possibility formed the crux of the our analysis in *Claybrook*. We specified that we reached our conclusion because "plaintiffs brought suit to contest *all* use of deadly force against their deceased father, not only the shot that took his life." *Id.* Thus, the initial volley of gunfire formed a distinguishable cause of action. *Id.*

By contrast, Berkley and Gilmore immediately identified themselves as officers, and despite Hickman's contention that Berkley and Gilmore provoked any threatening action that Hickman may have engaged in, it remains undisputed that Hickman's allegedly threatening conduct preceded the gunfire. Under this view, Berkley and Gilmore did not "actively participate in the use of excessive force" against Hickman. Rather, the only acts that the Court may consider consist of Berkley and Gilmore surrounding Hickman, identifying themselves as officers, and commanding that he show his hands. These non-violent acts were entirely reasonable as an effort to effectuate a valid arrest warrant. Therefore, we AFFIRM the district court's grant of summary judgment in favor of Berkley and Gilmore.

B. *Denial of Summary Judgment as to Officer Moore*

As to Officer Moore's appeal of the district court's denial of his motion for summary judgment, the central issue on appeal concerns the jurisdiction of this court. "'[A] defendant, entitled to invoke a qualified-immunity defense, may not appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial.'" *Claybrook*, 274 F.3d at 1102-03 (quoting *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995)). However, "[i]f the factual disputes the district court relied on in denying summary judgment are immaterial to the legal issues raised by the appeal, this court may exercise its jurisdiction." *Id.* at 1103 (alteration in original) (internal quotation marks omitted).

The factual dispute underlying the district court's denial of qualified immunity for Moore goes to the heart of Hickman's claim. First, the district court found that Hickman had alleged sufficient facts to support his assertion that "Moore shot at Mr. Hickman's back gratuitously and in reaction to Craig shooting Mr. Hickman." Hickman had submitted an expert report opining that "by the time Moore had determined to shoot, Hickman had turned away and was heading in the direction of his house." Second, the district court found that the evidence regarding the events that unfolded after the shooting "raise questions regarding the circumstances under which Moore shot Mr. Hickman," namely:

> conflicting statements of the officers regarding how they found the gun; photos taken of the gun allegedly held by Mr. Hickman, which indicate a lack of blood on the gun; Mrs. Hickman's statement that the gun found with Mr. Hickman was one he did not normally carry; Mrs. Hickman's statement that Mr. Hickman did not keep a gun on the night stand; the statement of the neighbor who saw officers carrying weapons out of the Hickman residence after shots were fired; whether there was sufficient light

> for Moore to determine Mr. Hickman was threatening; and records indicating a lapse
> in time between the shooting and the time an ambulance was called.

The court concluded that, under Hickman's version of events, "one could reasonably find, for example, that Moore unreasonably believed Mr. Hickman was threatening or that Moore, and Gilmore and Berkley, did not see Mr. Hickman raise his hand as if he had a gun."

As the reasonability of an officer's use of force forms the crux of qualified immunity, the factual dispute is material to the legal issues raised on appeal. Accordingly, because we lack jurisdiction to consider this appeal, we DISMISS it.

## C. Summary Judgment for Sheriff James Lee Berrong, and Blount County, Tennessee

Hickman does not appear to challenge the district court's grant of summary judgment in favor of Berrong, in his official capacity. He does, however, challenge the grant of summary judgment in favor of Blount County, Tennessee, for promulgating an unconstitutional policy regarding the use of deadly force, and for engaging in a custom or practice of condoning Moore's use of excessive force. We review the district court's grant of summary judgment de novo, noting that under § 1983, a municipality can only be held liable if the plaintiff demonstrates that the injury suffered was a direct result of the city's official policy or custom. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Slusher v. Carson*, 540 F.3d 449, 456 (6th Cir. 2008). When "no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001). Therefore, the relationship between any alleged Blount County policy and the actions of Craig, Gilmore, and Berkley is irrelevant, as we have determined that they engaged in no constitutional

violations. Thus, we review the claim against Blount County only insofar as it pertains to Moore's

actions.

### 1. Deadly Force Policy

Hickman argues that Blount County's deadly force policy is unconstitutional. The relevant

sections of the deadly force policy read:

> C. Deputies may use deadly force anytime that a suspect has the means and ability to seriously injure others. A Deputy does not necessarily have to wait until a firearm is pointed at someone, or a shot is fired, before using deadly force, since this could greatly increase risk to a Deputy, or others, who could be injured or killed.
> . . . .
> H. Deputies may use deadly force only when they believe that the action is in defense of human life. Such defense will include a Deputy's own life, or that of any other person in threat of serious physical injury or death. All other reasonable means will be exhausted, or determined not feasible, before using deadly force. . . . Self defense and defense of others will be the only policy guideline for employing deadly force.

Hickman focuses his argument on a single sentence of this policy, permitting officers to "use deadly

force anytime that a suspect has the means and ability to seriously injure others." He argues that this

sentence "impermissibly authorizes officers to shoot an armed subject without first making an

individual determination that an imminent threat of death or serious bodily injury is occurring."

Hickman's analysis is incomplete. He disregards paragraph H of the policy, which explicitly

limits the officers' permitted use of deadly force to only those situations in which they have "ma[de]

an individual determination that an imminent threat of death or serious bodily injury is occurring."

Paragraph H satisfactorily limits the officers' discretion to the confines of the

*Garner* standard—where "the officer has probable cause to believe that the suspect poses a threat

of serious physical harm, either to the officer or to others." *Sample v. Bailey*, 409 F.3d 689, 697 (6th

Cir. 2005) (quoting *Garner*, 471 U.S. at 11). Therefore, the district court properly ruled that Blount County's deadly force policy is constitutional and cannot form the basis of municipal liability.

### 2. Deliberate Indifference to Moore's Excessive Use of Force in Executing Arrests

Hickman further argues that "Moore's gratuitous use of force" in shooting Hickman "occurred as a result of [Blount] County's longstanding custom" of sanctioning such actions. In support of this allegation, Hickman submitted three excessive force complaints filed against Moore, two of which were filed in 2003, and one in 2005, and noted that officers of the Blount County Sheriff's Department shot and killed an alleged nonviolent misdemeanant in 2003. Hickman argues that Blount County took no action to address these matters, and criticizes the department for later promoting Moore to a supervisory position. Taken together, Hickman contends that this evidence shows that Blount County has a "custom and practice of repeatedly approving the use of excessive force which carried through to authorizing the deadly plan to confront Mr. Hickman with excessive force."

A handful of isolated excessive force complaints occurring several years before the relevant conduct do not establish a "pattern or practice" of condoning such activity. Further, as the district court noted, Blount County investigated and addressed each of these complaints. Even if, as Hickman contends, Blount County did little to punish Moore or to prevent this kind of conduct from recurring, the complaints are sufficiently few in number and removed in time from the shooting that they do not credibly show a custom or practice of condoning Moore's use of excessive force in

executing arrests. For this reason, the district court's grant of summary judgment in favor of Blount

County is AFFIRMED.[1]

## D. Hickman's Gunowner Rights Claim

Hickman twice sought to add a "Gunowners Rights" claim against Defendants, alleging

violations of 42 U.S.C. §§ 1983 and 1988. Hickman argued that the officers unconstitutionally

sought to disarm a "lawfully armed citizen," in violation of Hickman's Second Amendment right to

bear arms. The district court denied the motion to amend his complaint and dismissed the Gunowner

Rights claim as futile.

Hickman argues that the district court erred in dismissing the claim, relying on *District of*

*Columbia v. Heller* to establish the primacy of "the right of law-abiding, responsible citizens to use

arms in defense of hearth and home." 554 U.S. 570, 635 (2008). From this quote, Hickman asserts

a "fundamental right of self defense." He contends that Blount County's deadly force policy

prompted officers to shoot Hickman "simply because they believe he has the means and ability to

seriously injure others," thus depriving Hickman of this fundamental right.

Hickman's argument is without merit. Irrespective of the Supreme Court's holding in *Heller*,

the Court did not decide *Heller* until June 2008, several months after the shooting took place. Thus,

the right Hickman asserts was not clearly established at the time of the shooting, and qualified

immunity would apply to Hickman's claim. We therefore AFFIRM the district court's dismissal of

this claim.

---

[1] Because Hickman does not challenge the district court's grant of summary judgment to Sheriff Berrong, it is also AFFIRMED.

*E. Motions for Further Discovery*

After the defendants filed their motions for summary judgment, Hickman twice filed motions under Federal Rule of Civil Procedure 56(f), requesting that the district court delay ruling on the pending summary judgment motions and permit Hickman to conduct further discovery. In its opinion granting summary judgment to Defendants, the district court denied Hickman's motions as moot, noting that it had based its summary judgment on reasons unrelated to the discovery motions. On appeal, Hickman challenges the denial of the motions on two bases: (1) the request to depose Moore, Craig, Berkley, and Gilmore "as to timing and location and position of Hickman's body when shot," and (2) the request to depose a county official "related to the administrative investigation and handling of excessive force complaints."

*1. Standard of review*

We review the court's denial of a Rule 56(f) motion for an abuse of discretion. *McKinley v. City of Mansfield*, 404 F.3d 418, 443 (6th Cir. 2005). An abuse of discretion occurs when a district court "commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). To prevail on a Rule 56(f) motion, the plaintiff must "state with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (internal quotation marks omitted). We typically will find that a district court has abused its discretion in denying such a motion if the

court does so when *no* discovery has occurred. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 420-21 (6th Cir. 2008); *McKinley*, 404 F.3d at 443.

We have previously noted the importance of the qualified immunity doctrine not only in protecting officials from civil damages and unnecessary trials, but "to protect them from . . . the potential disruptiveness of discovery." *Everson v. Leis*, 556 F.3d 484, 491 (6th Cir. 2009). Indeed, we have used this principle to require district courts to resolve summary judgment motions based on qualified immunity defenses even before discovery has been completed, obliging the plaintiff to file a Rule 56(f) affidavit to explain the need for additional discovery. *Summers*, 368 F.3d at 887.

*2. Depositions concerning the timing, location, and position of Hickman's body when shot*

Hickman concedes that discovery has occurred, framing his request as one for "further discovery." With regard to the depositions of the officers, Hickman explains at length that these depositions would answer critical questions regarding the alleged four-minute period between when the shooting occurred and when the officers summoned an ambulance. He further argues that the county official would shed light on the spoliation of the evidence showing the precise details of the shooting, the location of Hickman's body, and the possible presence of a gun.

While Hickman gives a detailed explanation of the evidence that he seeks and his reasons for seeking it, his precise stance and whether he possessed a gun at the time of the shooting are irrelevant to whether Craig's use of force was reasonable. Rather, the only question is whether Craig's prior knowledge and perception of events would give a reasonable officer probable cause to discharge her weapon. As neither Gilmore nor Berkley fired any shots at Hickman, his stance at the time of the shooting is irrelevant to any claim against them. Further, with respect to Moore's use

of force, the fact that Moore cannot avail himself of qualified immunity means that Hickman likely will have the opportunity to obtain this discovery with respect to that claim. Therefore, the district court did not abuse its discretion in denying this motion, and we AFFIRM.

    *3. Depositions concerning Blount County's handling of excessive force complaints*

Hickman also appeals the district court's denial of his motion to depose a county witness regarding "the administrative handling of excessive force complaints." Hickman contends that this information is relevant to his claim against the county, because policy-level county officials may have caused the forensic examiners not to collect information about the shooting at the level of specificity that Hickman desires, and because of the excessive force complaints previously leveled against Moore. This testimony would "either connect the dots or . . . explain why the dots were not connected . . . ."

We agree with the district court that such discovery is irrelevant to Hickman's claims and that allowing it would contravene the purposes of qualified immunity. Hickman presents no affirmative evidence of a conspiracy to protect officers from the repercussions of their use of force. Rather, Hickman draws unsupported inferences from Blount County's failure to photograph Hickman's body immediately after the shooting (that is, before the ambulance or forensic examiners arrived) and its continuing use of Moore as a supervising officer, despite a handful of complaints having been filed against him over the course of several years. Permitting Hickman to continue to subject Blount County to "the disruptiveness of discovery" in an effort to find evidence to support this claim would frustrate the purposes of qualified immunity doctrine. Thus, the district court did not abuse its discretion in denying this motion, and we AFFIRM.

*F. Rule 60(b)(2) motion*

After the district court issued final judgment, Hickman's attorney discovered a videotape of a March 25, 2011 incident in which Moore and Berrong hit and kicked a compliant arrestee. Hickman filed a Rule 60(b)(2) motion to ask the district court to revise its ruling in light of this "newly discovered evidence," as the evidence showed acquiescence toward, and even participation in, Moore's repeated use of excessive force by a Blount County policy-maker.

*1. Standard of review*

"[W]e review the denial of a Rule 60(b) motion for abuse of discretion." *Kalamazoo River Study Grp. v. Rockwell Int'l Corp.*, 355 F.3d 574, 583 (6th Cir. 2004). An abuse of discretion occurs when a district court "commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Info-Hold, Inc.*, 538 F.3d at 454 (internal quotation marks omitted).

The district court denied Hickman's motion because it determined that the videotape did not constitute "newly discovered evidence" under Rule 60(b)(2) and because it found the information contained in the videotape to be cumulative of other evidence showing Moore's excessive use of force. These conclusions were correct.

As a general matter, the "newly discovered evidence" giving rise to a Rule 60(b)(2) motion "must pertain to evidence which existed at the time of trial." *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 136 (6th Cir. 1990). This newly discovered evidence may not merely be probative of facts in existence at the time of trial, but must itself establish such facts. *See Multimatic, Inc. v. Faurecia Interior Sys. USA, Inc.*, 358 F. App'x 643, 653 (6th Cir. 2009) (declining to review a post-judgment

change in a company's production schedule that would undermine the lost-profits damages awarded by the jury because it did not constitute "newly discovered evidence"); *Satyam Computer Servs., Ltd. v. Venture Global Eng'g, LLC*, 323 F. App'x 421, 427-28 (6th Cir. 2009) (declining to review letters that surfaced several months after final judgment tending to show that the defendant may have misrepresented the nature of its approval of a transfer of shares); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, Nos. 05-2479, 06-2538, 2007 WL 2733336, at *4 (6th Cir. Sept. 19, 2007) (declining to review a new amended complaint filed after a judgment that rested on the original complaint). Given that the events recorded in this videotape occurred after final judgment was issued, however, the videotape does not meet the *Davis* standard, and may not form the basis of a Rule 60(b) motion.

Even if the district court had the discretion to review the videotape, it did not abuse its discretion by declining to reconsider its judgment. The district court determined that Blount County did not have a policy of condoning Moore's excessive use of force because Blount County had addressed each of the three complaints filed against Moore, albeit not to Hickman's satisfaction. Hickman argues that the videotape is not cumulative of this prior evidence because it depicts Sheriff Berrong participating in Moore's use of excessive force, providing a much stronger indication that the sheriff condoned Moore's behavior. The district court was not persuaded. It noted that Blount County had taken appropriate remedial action following the incident, suggesting that it had no practice of condoning such behavior. There being no error in its reasoning, we conclude that the district court did not abuse its discretion in denying Hickman's motion for reconsideration. We therefore AFFIRM the district court's denial of Hickman's Rule 60(b)(2) motion.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to all Defendants except Moore; we DISMISS Moore's appeal of the district court's denial of qualified immunity; and we AFFIRM the district court's denial of (1) Hickman's motion to reconsider his Gunowner Rights claim; (2) Hickman's Rule 56(f) motions; and (3) Hickman's Rule 60(b)(2) motion.